**BAHAN TEXTILE MACHINERY COM-
PANY, Inc., Appellant,**

v.

**UNITED STATES of America,
Appellee.**

No. 71–1308.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 30, 1971.

Decided Jan. 13, 1972.

Alfred F. Burgess and Wesley M. Walker, Greenville, S. C. (O. Doyle Martin, and Leatherwood, Walker, Todd & Mann, and Wyche, Burgess, Freeman & Parham, P. A., Greenville, S. C., on the brief) for appellant.

Paul M. Ginsburg, Atty., Tax Division, Dept. of Justice (Fred B. Ugast, Acting Asst. Atty. Gen., Meyer Rothwacks and Thomas Stapleton, Attys. Tax Division, Dept. of Justice, and John K. Grisso, U. S. Atty., on the brief) for appellee.

Before SOBELOFF, Senior Circuit Judge, and CRAVEN and FIELD, Circuit Judges.

SOBELOFF, Senior Circuit Judge:

In this action, Bahan Textile Machinery Company ("Taxpayer") seeks to recover $219,805.31 in federal income and accumulated earnings taxes assessed against it and collected by the Internal Revenue Service for the years 1959, 1960 and 1961. The District Court denied Taxpayer the refund sued for and this appeal followed. We affirm.

Taxpayer is in the business of manufacturing replacement parts for textile weaving looms. Since its organization in 1926, it has been a closely held family corporation, managed by its founder, William H. Bahan and, since 1949, by his son, Edward F. Bahan. Despite the realization of substantial profits in the period since 1949, Taxpayer chose not to declare its first dividend until 1964. Instead, earnings and profits were accumulated until, by 1959, the first year at issue here, Taxpayer had amassed undistributed earnings and profits in excess of $1,700,000. By the end of 1961, the last of the taxable years for which a deficiency was assessed, Taxpayer had increased its total accumulated earnings to slightly under $2,200,000.

After an audit of the company's income tax returns, the Commissioner determined it was subject to the accumulated earnings tax prescribed in sections 531 and 532 of the Internal Revenue Code of 1954 ("I.R.C.") for the three years involved. The Commissioner also assessed additional income taxes based on the disallowance of certain depreciation deductions claimed by Taxpayer.

I

Sections 531 and 532 of the I.R.C. provide for a tax on earnings accumulated by a corporation "formed or availed of for the purpose of avoiding the income tax with respect to its shareholders * * * by permitting earnings and profits to accumulate instead of being divided or distributed." I.R.C. § 532(a).

■ Since liability for this tax depends on the purpose underlying the accumulations, inquiry must be made into the state of mind of those controlling the corporation. Helvering v. National Grocery Co., 304 U.S. 282, 292–294, 58 S.Ct. 932, 82 L.Ed. 1346 (1938); Oyster Shell Products Corp. v. C. I. R., 313 F.2d 449, 452 (2d Cir. 1963). In this connection, I.R.C. § 533(a) creates a presumption that a tax avoidance motive exists where "earnings and profits * * * are permitted to accumulate beyond the reasonable needs of the business."

■ In assessing the "reasonable needs of the business," account must be taken not only of immediate, day-to-day business needs but also of "reasonably anticipated needs of the business." I.R.C. § 537. However, the corporation is by no means given a blank check to accumulate earnings indefinitely for future plans which are without substance. Oklahoma Press Publishing Co. v. United States, 437 F.2d 1275 (10 Cir. 1971). Speaking to this point, section 1.537–1 (b) of the Treasury Regulations on Income Tax (1954 Code) declares:

> [T]he corporation must have specific, definite and feasible plans for the use of such accumulations * * *. Where the future needs of the business are uncertain or vague, where the plans for the future use of an accumulation are not specific, definite and feasible, or where the execution of such a plan is postponed indefinitely, an accumulation cannot be justified

on the grounds of reasonably anticipated needs of the business.

There is no dispute as to the amount of the accumulations involved here. Taxpayer maintains, however, that the accumulations were motivated solely by the day-to-day and anticipated future monetary needs of the company. Specifically, it claims that cash reserves had to be set aside for working capital as well as for implementation of the following plans:

(1) Replacement of Foundry and Machine Shop Equipment;

(2) Modernization of Physical Plant and Office Equipment;

(3) Pension Plan with Past Service Feature; and

(4) Maintenance of Competitive Position.

■ The District Court, applying correct legal standards, found as a fact that Taxpayer failed to show the necessary concreteness of the asserted future plans to justify the accumulations. Additionally, the District Court found that:

[Taxpayer's] accumulated earnings at the end of 1958 were sufficient, without the implementation by any additional accumulation of the earnings of the taxable years, to provide for the needs of [Taxpayer's] business as that business existed at the end of the taxable years, and to provide for the reasonably anticipated future needs of the business as they existed on the basis of facts at the end of the taxable years.

These findings have ample support in the evidence adduced below. Mindful of our limited role in the review of fact findings, we perceive no reason for overturning them in this case. *See* Helvering v. National Grocery Co., 304 U.S. 282, 292–294, 58 S.Ct. 932, 82 L.Ed. 1346 (1938); Smoot Sand and Gravel Corp. v. Commissioner, 274 F.2d 945 (4 Cir. 1960), cert. denied, 362 U.S. 976, 80 S. Ct. 1061, 4 L.Ed. 1011 (1960). It is no excuse to say, as Taxpayer does, that the alleged future plans lacked specificity because it was a small, informally-conducted corporation and that "every time Edward F. Bahan sat at his desk, the Board of Directors was in session." The specificity requirements were written into the regulations by the Commissioner precisely because a loosely run corporation like the appellant presents a high potential for post hoc, unsupported rationalizations for the prohibited hoarding of profits. *Cf.* Motor Fuel Carriers, Inc. v. United States, 322 F.2d 576 (5 Cir. 1953); 3 U.S.Code Cong. & Admin.News 1954, at 4311–4312, 4621, 4701.

■ Taxpayer also argues earnestly that the District Court was in error in calculating the company's working capital needs in that the court failed to allow sufficient working capital for the day-to-day operation of the business. The crux of this issue is a conflict in the interpretation and application of the accounting formula ordinarily used to determine working capital needs of a company such as Taxpayer.[1] We are entirely satisfied that the calculations suggested by the Government and adopted by the District Court fairly reflect Taxpayer's working capital needs.[2] *See,*

---

1. On appeal, the parties agree the basic formula to be applied is that developed by the Tax Court in Bardhal Manufacturing Co. v. Commissioner, 24 T.C.M. 1030 (1965). The Commissioner would apply that formula without change. Taxpayer, however, argues that a modification is necessary to reflect Taxpayer's need for working capital sufficient to cover funds tied up during the purchase and processing of raw materials until a saleable inventory of loom replacement parts has been produced. The Government's position is that the *Bardhal* formula, without modification, already reflects these aspects of Taxpayer's working capital needs.

2. In a pre-trial agreement between counsel, the Government consented to inform Taxpayer if it should decide to call an expert witness to challenge Taxpayer's working capital estimates so that Taxpayer would have an opportunity to de-

Ziegler, The "New" Accumulated Earnings Tax: A Survey of Recent Developments, 22 Tax Law Review 77 (1966).

■ It is our conclusion that the District Court's findings regarding the unreasonableness of taxpayer's accumulations must stand. We also uphold the court's finding that Taxpayer has failed to dispel the presumption created by section 533(a) that unreasonable accumulations are motivated by tax avoidance desires. In an effort to rebut this presumption, Taxpayer contends the accumulations in question came into existence simply because Edward F. Bahan is an overly cautious man, fearful of long term debt and conservative in his financial outlook. Bahan, we are asked to believe, honestly felt that his company had a dire need to accumulate all profits to meet a variety of business contingencies and to insure successful future operations.

It would be singularly naive to accept the proffered explanation, for it is plainly refuted by solid facts revealed in the record, including the $400,000 paid to or on behalf of shareholder relatives during Edward F. Bahan's tenure as president.

The District Court found as a fact that Taxpayer made payments as follows to various relatives of Edward F. Bahan: (1) $126,000 to Esther C. Bahan, Edward Bahan's mother; (2) $67,469.10 to Winifred B. Peters, his sister; (3) $174,007 to Otto E. Peters, his brother-in-law, and (4) $32,000 to Paul H. Bahan, another relative. No substantial services were rendered for these advances and they have never been repaid. Taxpayer has also seen fit to provide luxury automobiles for the personal use of Edward F. Bahan, his wife, his mother and sister.

■■ These disbursements, undenied by Taxpayer, to or for the benefit of favored relatives, show not only that the company was dissipating funds which it claimed were needed for the business, but also indicate a purpose to distribute corporate profits indirectly rather than as dividends that would be taxable to the recipients. The conclusion is inescapable that those in control of Taxpayer were attempting to evade their lawful obligation not to use Taxpayer's corporate form as a tax avoidance device. The accumulated earnings tax is properly imposed where, as in the present case, the owners of a closely-held corporation siphon out company profits "informally" without declaring dividends.

## II

Finally, Taxpayer contends that its calculations of depreciation deductions, which the Commissioner rejected, were based on the correct estimate of the useful life of certain leasehold improvements, while the smaller deductions calculated by the Commissioner were based on simple error in the estimate of the improvements' useful life.

pose the expert witness. However, the Government called no expert witness and consequently there was no one to depose. Taxpayer now argues that the Government's failure to challenge Taxpayer's *Bardhal* calculations at trial through an expert witness precludes the Government from otherwise contesting Taxpayer's working capital computations. Taxpayer insists that the Government's inclusion of its own *Bardhal* calculations in its post-trial brief violated the pretrial agreement and hence the Government's figures should be disregarded.

This argument lacks substance. The Government's *Bardhal* calculations were based on financial information already in the record and, in most cases, original-ly generated by Taxpayer. No element of surprise was involved, as Taxpayer himself, at the court's suggestion, postponed argument on the proper accounting formula until the post-trial briefs. This being so, Taxpayer was doubtless aware that the proper working capital formula would be discussed in the post-trial briefs. Finally, as the Government points out, its *Bardhal* calculations, although *based* on evidence, were not themselves evidence and were not offered as such. The Government's calculations were in the nature of arguments based on evidence and, viewed in that light, it was not improper to include them in the post-trial brief.

However, merely raising a contention that the Commissioner committed error is not enough to carry the day for the Taxpayer. In the absence of *proof* that the Commissioner's estimate of the useful life of the improvements was wrong, as well as proof of the correct useful life, the District Court was entirely correct in holding against Taxpayer on this issue. *See* Helvering v. Taylor, 293 U.S. 507, 514, 55 S.Ct. 287, 79 L.Ed. 623 (1935); Compton v. United States, 334 F.2d 212, 216 (4 Cir. 1964).

Accordingly, the District Court's judgment is

Affirmed.