**INLAND TERMINALS, INC.,** Appellant,

v.

**UNITED STATES of America,**
Appellee.

**No. 72–2116.**

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 6, 1973.

Decided April 26, 1973.

Shale D. Stiller, Baltimore, Md. (Frank, Bernstein, Conaway & Goldman, Baltimore, Md., on brief), for appellant.

Ann Belanger, Atty., Tax Div., U. S. Dept. of Justice (Scott P. Cramption, Asst. Atty. Gen., Meyer Rothwacks and Thomas L. Stapleton, Attys., Tax Div., U. S. Dept. of Justice, and George Beall, U. S. Atty., on brief), for appellee.

Before WINTER and CRAVEN, Circuit Judges, and BRYAN, District Judge.

WINTER, Circuit Judge:

When the Internal Revenue Service assessed accumulated earnings taxes and interest against Inland Oil and Chemical Corporation (Inland Oil) and its wholly owned subsidiary, Inland Terminals, Inc. (Terminals), for the taxable years ended December 31, 1965, and August 31, 1965, respectively, both paid the respective assessments and both sued for a refund. The district court[1] gave judgment for Inland Oil for the amounts paid by it, because the court found that Inland Oil had proven reasonably anticipated business needs sufficient to justify its accumulated earnings. No appeal was taken from this ruling. In Terminals' suit, the district court found that the subsidiary, Terminals, failed to prove that its reasonably anticipated business needs justified its accumulation of earnings and gave judgment for the government. In arriving at this conclusion, the district court ruled that "[a]lthough a parent corporation may under appropriate circumstances accumulate earnings for the reasonable needs of a subsidiary, a subsidiary may not ordinarily accumulate earnings for the needs of its parent." 338 F.Supp. at 1335–1336. We disagree, and in Terminals' appeal, we reverse and remand for further proceedings.

## I.

Terminals is the wholly owned subsidiary of Inland Oil which, in turn, is owned by Alfred R. Himmelrich, Sr. and his sons, and they are the directors and officers of both corporations. Until the early 1960's, Inland Oil's business was primarily the resale of petroleum solvents to the paint and dry cleaning industries. Inland Oil purchased the raw materials, processed them, and distributed them. The subsidiary, Terminals, owned the land, storage facilities, and automotive equipment used in the business, and leased them to Inland Oil. The rentals paid by Inland Oil were Terminals' sole source of income.

Inland Oil competed with its suppliers, the major oil companies, in the sale of petroleum solvents. Its business activities were profitable only because the major oil companies granted it a "voluntary allowance" or discount. By 1965, the directors were concerned with the precarious nature of this arrangement. In the early 1960's, changes in the paint and dry cleaning industries augured a decline in sales of petroleum solvents. As a result, the directors of Inland Oil by 1965 were considering two alternative courses. As found by the district court, these alternatives were: "(A) Diversification and expansion into the chemical solvent business, which would require a substantial outlay of cash, primarily because these products cost ten times more than petroleum solvents, and sales would generate a much higher total of accounts receivable; (B) Purchase of another property, preferably on the waterfront, to relieve the overcrowding at the existing plant . . . with the added possibility of opening of marine terminal facility at such new location." 338 F.Supp. at 1332. The directors estimated that the latter course would cost $500,000. With a policy of only short term borrowing, the companies' financial situation would not permit them to do both. The directors explored the relocation alternative with a real estate firm, but ultimately chose diversification into chemical solvents. During the ensuing years, Inland Oil increased its purchases of chemical solvents from $500,000 to $1,600,000. At the same time, Inland Oil's cash and Treasury Bill accumulations decreased, while its accounts receivable increased.[2]

1.  338 F.Supp. 1330 (D.Md.1972).

2.  Inland Oil Balance Sheets for the calendar years 1965–1969 show the shift:

|  | Cash and Treasury Bills | Accounts Receivable |
|---|---|---|
| 12/31/65 | $360,000 | $268,000 |
| 12/31/66 | 300,000 | 309,000 |
| 12/31/67 | 234,000 | 444,000 |
| 12/31/68 | 112,000 | 580,000 |
| 12/31/69 | 118,000 | 603,000 |

The increased purchases of more expensive chemical solvents and normal business growth contributed to the decline in cash and Treasury Bills, while the increased resale price of chemical solvents augmented the accounts receivable. Collectively, these factors required greater amounts of working capital.

During the same period, Terminals was contemplating these expenditures: (i) replacement of its truck fleet with trucks equipped to transport chemical solvents, costing about $100,000; (ii) improvements to the existing plant and office facilities, costing about $40,000; (iii) purchase of another storage tank, costing about $35,000; and (iv) purchase of the necessary land and equipment if the directors chose the ultimately rejected relocation alternative, costing about $500,000. Terminals did ultimately make expenditures (i)–(iii), financing them wholly from current rental income.[3] It abandoned plan (iv) when the directors opted for diversification. As was true with regard to Inland Oil, Terminals required greater working capital during this period.

In 1965, Inland Oil had taxable income of $92,187.90. It paid $39,250.19 in federal income tax and $14,000 in dividends, leaving $38,937.71 in undistributed earnings to be added to its previously accumulated earnings of $247,525.36. The total accumulation at the end of 1965 was $286,463.07. In fiscal 1965, Terminals had taxable income of $30,755.93. It paid $4,781.65 in federal income tax, but no dividends to Inland Oil, its sole shareholder, leaving $24,525.23 in undistributed earnings to be added to its previously accumulated earnings of $98,729.02. Terminals' total accumulation at the end of 1965 was $123,254.25. The parent and the subsidiary together accumulated $63,462.94 in 1965 and at the end of the year, the accumulations of both parent and subsidiary totaled $410,717.32.

## II.

An "accumulated earnings tax" is imposed on the "accumulated taxable income" IRC § 531, 26 U.S.C. § 531 (1967), of "every corporation . . . formed or availed of for the purpose of avoiding the income tax with respect to its shareholders or the shareholders of any other corporation, by permitting earnings and profits to accumulate instead of being divided or distributed." IRC § 532(a), 26 U.S.C. § 532(a) (1967). If a wholly owned subsidiary accumulates income for the purpose of avoiding the imposition of the individual income tax upon the individual shareholders of its parent, the accumulated taxable income of the subsidiary is subject to the tax. Treas.Reg. § 1.532–1(a)(2).

There is a presumption that a tax avoidance motive exists where "the earnings and profits of a corporation are permitted to accumulate beyond the reasonable needs of the business." IRC § 533(a), 26 U.S.C. § 533(a) (1967). See United States v. Donruss, 393 U.S. 297, 89 S.Ct. 501, 21 L.Ed.2d 495 (1969);

3. Terminals Balance Sheets:

| | Cash and Treasury, Bills | Cost of Autos, Trucks and Trailers | Cost of Bulk Storage Equipment | Cost of Building |
|---|---|---|---|---|
| 8/31/65 | $58,000 | $109,000 | $ 76,000 | $23,000 |
| 8/31/66 | 81,000 | 127,000 | 76,000 | 23,000 |
| 8/31/67 | 74,000 | 167,000 | 80,000 | 23,000 |
| 8/31/68 | 45,000 | 206,000 | 111,000 | 38,000 |
| 8/31/69 | 25,000 | 218,000 | 111,000 | 70,000 |

These figures do not include the rentals due from Inland Oil, which were treated as accounts receivable.

Bahan Textile Machinery Co. v. United States, 453 F.2d 1100, 1101 (4 Cir. 1972). Inquiry, therefore, focuses on "the reasonable needs of the business." "[T]he term . . . includes . . . the reasonably anticipated needs of the business." IRC § 537(a)(1), 26 U.S.C. § 537(a)(1) (1972). The Regulations establish that the reasonableness of the accumulation should be measured by the judgment of a "prudent businessman." Treas.Reg. § 1.537–1. Moreover, "[i]n order for a corporation to justify an accumulation of earnings and profits for reasonably anticipated future needs of the business, . . . the corporation must have specific, definite, and feasible plans for the use of such accumulation." Treas.Reg. § 1.537–1(b)(1). Bahan Textile, 453 F.2d at 1101; Oklahoma Press Publishing Co. v. United States, 437 F.2d 1275 (10 Cir. 1971). In applying this test to "projected expansion or investment plans," the court shall review the plans "in the light of the facts during each year and as they exist as of the close of the taxable year." Treas.Reg. § 1.537–1(b)(2).

### III.

Both the appellant, Terminals, and its parent, Inland Oil, contended, in the district court, that their accumulations were necessary to finance their contemplated relocation or diversification. The district court found that Inland Oil's plans to relocate or diversify were sufficiently concrete and reasonable in 1965 to justify its accumulated earnings. With respect to Terminals, the district court found that although it had generally contemplated in 1965 the expenditures referred to above, its plans were not sufficiently specific and definite to justify its accumulations. Treas.Reg. § 1.537–1(b)(1). The district court further relied on Terminals' subsequent use of current income to finance these projects, its failure to consider funding the purchase of automotive equipment and its failure to offer evidence as "to depreciation, rentals, or purchase arrangements, contemplated or actual." Finally, the district court held as we have earlier quoted, that Terminals could not accumulate earnings for the reasonably anticipated business needs of its parent, and therefore, the parent's business needs could not be used to justify the subsidiary's accumulation. For these reasons, the district court concluded that Terminals failed to rebut the presumption that it had accumulated earnings above its reasonable needs for the proscribed purpose of avoiding individual shareholder income tax. IRC § 533(a). See Donruss.

The district court's finding that Terminals' plans contemplated in 1965 for its capital expenditures were not sufficiently specific and definite to justify its accumulation, standing alone, seems neither clearly erroneous nor legally incorrect. It is, therefore, to Inland Oil's plans that we turn. In concluding that Terminals might not accumulate earnings for Inland Oil, the district court relied on Treas.Reg. § 1.537–3(b).[4] It provides that if one corporation substantially controls and operates another, the business of the controlled corporation may be considered the business of the controlling corporation for the purposes of determining the reasonable business

---

4. Treas.Reg. 1.537–3(b) provides in pertinent part:

> If one corporation owns the stock of another corporation and, in effect, operates the other corporation, the business of the latter corporation may be considered in substance, although not in legal form, the business of the first corporation . . . . Thus, the business of one corporation may be regarded as including the business of another corporation if such other corporation is a mere instrumentality of the first corporation; that may be established by showing that the first corporation owns at least 80 percent of the voting stock of the second corporation. If the taxpayer's ownership of stock is less than 80 percent in the other corporation, the determination of whether the funds were employed in a business operated by the taxpayer will depend upon the particular circumstances of the case . . . . .

needs of the controlling corporation. In short, a parent can justify its accumulated earnings by reference to its subsidiary's reasonable business needs. The district court apparently concluded that Treas.Reg. § 1.537–3(b) forbids the converse situation because it fails to mention it.

■ We cannot agree with the district court's conclusion that a wholly owned subsidiary cannot justify its accumulated earnings by reference to its parent's reasonably anticipated business needs. First, we note that no other authority or commentator has suggested this conclusion.[5] The sparse commentary supports the opposite conclusion.[6] It reasons that the imposition of an accumulated earnings tax on a wholly owned subsidiary would be too harsh an incentive to pay dividends which, if distributed, would be subject only to a maximum effective tax rate of 7.2 per cent.[7]

■ Furthermore, Treas.Reg. § 1,-537–3(b) does not compel the district court's conclusion. The government urges that since the regulation focuses on control, it implies that it is permissible for one corporation to justify its accumulated earnings by reference to the reasonable needs of another corporation only if it controls the other corporation. But this argument loses force when applied in a case where one family controls both corporations. Where a closely held family corporation wholly owns a subsidiary corporation, it would only indulge a fiction to say that control flowed in one direction rather than the other. Since the very purpose of § 1.537–3(b) is to insure that substance prevails over form in the consideration of a corporate family's reasonable business needs, we reject the government's interpretation of § 1.537–3(b) as applied in these circumstances.

■ The government relies on several cases to support the proposition that § 1.537–3(b) should be strictly construed to forbid one corporation from accumulating earnings for another where it does not control the other. Latchis Theatres of Keene v. C.I.R., 214 F.2d 834 (1 Cir. 1954); Crawford County Printing & Publishing Co. v. C.I.R., 17 T.C. 1404 (1952); Stanton Corp. v. C.I.R., 44 B.T.A. 56 (1941). But these cases are distinguishable from the instant case because they involve brother-sister, rather than parent-subsidiary corporations.[8] Where brother-sister corporations are involved, earnings can be transferred between them only through the common shareholder or shareholders, who will be subject to a progressive individual income tax. Thus, if § 1.537–3(b) were not construed to bar justification of the accumulated earnings of one corporation by reference to the business purposes of its sister corporation, it would frustrate one of the major purposes of the accumulated earnings tax, which is to force earnings out of a corporation to its individual shareholders so that they can be taxed a second time at graduated individual income tax rates.[9] On the other hand, a wholly owned subsidiary can transfer accumulated earnings directly

---

5. Cf. Proposed Treas.Reg. § 1.533–1(a)(3), 33 Fed.Reg. 9830–31 (1968) (proposing assessment of accumulated earnings tax on subsidiary where parent relies upon underlying value of its investment in the subsidiary to obtain funds for distributions to the parent's shareholders, rather than cause the subsidiary to distribute its earnings and profits).

6. Greer, The Accumulated Earnings Tax—New Decisions Focus Attention on an Old Problem, 51 Taxes 13, 16 (Jan. 1973) specifically criticizing the district court's conclusions. See CCH, The Tax on Accumulated Earnings (1968). Cf. Treas.

Regs. 1.1502–31(a)(18)(vi) and 1.1502–31(a)(19)(i).

7. Greer, supra n. 6, at 16.

8. "Brother-sister" corporations, as we use the term, are two or more corporations, owned and effectively controlled by one or more individuals. See United States v. Collins, 300 F.2d 821, 822 (1 Cir. 1962).

9. See Donruss, 393 U.S. at 303, 89 S.Ct. 501, 21 L.Ed.2d 495; Electric Regulator Corp. v. C.I.R., 336 F.2d 339, 346 (2 Cir. 1964); 7 Mertens, Law of Federal Income Taxation § 39.04 (1967 rev.).

to its parent, who will be taxed at most only at the relatively minimal rate for intercorporate dividends. IRC § 243, 26 U.S.C. § 243 (1967). Thus, it would not subvert the major purpose of the accumulated earnings tax to permit a wholly owned subsidiary to justify its accumulated earnings by reference to its parent's reasonably anticipated business needs.

We conclude, therefore, that in assessing the reasonable needs of a wholly owned subsidiary, it is permissible to consider the reasonable business needs of its parent, to the extent that the business needs of its parent have not already been cited pro tanto to justify the parent's accumulation of earnings.

### IV.

Under the district court's view of the case, there was no occasion to determine whether Inland Oil's reasonably anticipated business needs could justify both its and all or some part of Terminals' accumulated earnings in 1965. Under our view, this determination must be made, and it should be made in the first instance by the district court. The record indicates a significant likelihood that Terminals can prove that the addition of its 1965 undistributed earnings (less the intercorporate dividend tax, if any) to Inland Oil's accumulated earnings would not produce an amount which exceeded Inland Oil's reasonably anticipated business needs for that year. Therefore, we do not reach Terminals' further argument that the accumulated earnings tax is applicable solely where the subsidiary's accumulation of earnings has the effect of avoiding individual rather than intercorporate income taxes.

Accordingly, we reverse and remand this case for a determination of whether Terminals' accumulated earnings can be justified by Inland Oil's reasonably anticipated business needs which Inland Oil cannot itself satisfy, and for further proceedings not inconsistent with this opinion.

Reversed and remanded.