In re GRINGERI BROS. TRANSPORTA-TION CO., INC., Bankrupt.

FRUEHAUF CORPORATION, Plaintiff,

v.

M. G. SHERMAN, as he is Trustee in Bankruptcy of Gringeri Bros. Transportation Co., Inc., Defendant.

Bankruptcy No. 78–1581–L.

United States Bankruptcy Court,
D. Massachusetts.

Sept. 28, 1981.

Timothy H. Donohue, Hale, Sanderson, Byrnes & Morton, Boston, Mass., for Fruehauf Corp., plaintiff.

Charles R. Bennett, Jr., Riemer & Braunstein, Boston, Mass., for M. G. Sherman, defendant.

## MEMORANDUM ON COMPLAINT TO RECLAIM MOTOR VEHICLES

THOMAS W. LAWLESS, Bankruptcy Judge.

The Court has before it a complaint filed by the plaintiff, Fruehauf Corporation ("Fruehauf") to reclaim from the estate of the bankrupt, Gringeri Bros. Transportation Co., Inc. (the "bankrupt") twelve motor vehicles in which Fruehauf alleges to have valid and perfected security interests. The defendant, the trustee in bankruptcy (the "trustee"), contests Fruehauf's claim that its security interests are perfected and opposes the claim for reclamation. Subsequent to the filing of the complaint and upon agreement of the parties, the Court ordered that the motor vehicles be sold with liens to attach to the proceeds of the sale. Thus the issue is the priority between Fruehauf and the trustee with regard to the proceeds generated from the sale of the motor vehicles.

A trial was held on Fruehauf's complaint. Based upon the testimony and the documents received into evidence, I find the facts to be as set forth below.

From April 26, 1977 through May 4, 1978, Fruehauf entered into seven separate retail installment contracts for the sale of motor vehicles (trailers) to Newton Truck Rental, Inc. ("Newton").[1] These installment contracts involved a total of twelve motor vehicles including four new and eight used trailers.

In order to better understand the overall transactions between Fruehauf and New-

1. On December 31, 1977, Newton Truck Rental, Inc. merged with Gringeri Bros. Transportation Co., Inc. Gringeri Bros. Transportation Co., Inc., the surviving corporation, is the bankrupt herein.

ton, it is necessary, at least briefly, to review the circumstances involved in each of the contracts.

The first five of the used trailers sold to Newton (the subjects of the installment contracts of April 26 and June 27, 1977) had previously been sold by Fruehauf to Delaware Equipment Inc. ("Delaware"), a corporation doing business in Maine. Those trailers were then registered in Maine and Maine certificates of title were obtained showing Delaware as the owner and Fruehauf as the first lienholder. Subsequently, upon a default by Delaware under the contracts, Fruehauf repossessed the vehicles and held a foreclosure sale. At the foreclosure sale Fruehauf purchased the trailers. Thereafter Fruehauf brought the trailers back to Massachusetts and in turn sold them to Newton. At the time these trailers were sold to Newton each had outstanding Maine certificates of title.

Of the remaining used trailers two (the subjects of the December 23, 1977 contract) were also apparently repossessed by Fruehauf from previous owners,[2] purchased by Fruehauf at foreclosure sales and later sold to Newton. On these trailers, however no certificates of title were outstanding at the time they were sold to Newton.

The final used trailer (the subject of a contract of January 11, 1978) had been sold by Fruehauf's predecessor in interest, Strick Corporation, to Johnson Motor Lines, Inc. In this instance the sale occurred in North Carolina and a North Carolina certificate of title had been obtained. Upon default Strick repossessed the trailer and thereafter the trailer was sold to Newton. Again herein, the North Carolina certificate of title was outstanding at the time the trailer was sold to Newton.

In addition, Fruehauf entered into three other contracts with Newton in 1978 (February 24, April 10 and May 4) for the sale of four new trailers. No certificates of title were ever procured on these trailers.

All of the above contracts were negotiated by various representatives of Fruehauf and Joseph Gringeri ("Gringeri"). Gringeri signed all seven of the contracts in the capacity of treasurer of Newton. Even after December 31, 1977, when Newton had merged into the bankrupt and, in fact, no longer existed as a corporation, Gringeri continued to sign the installment contracts as a representative of Newton.

In all remaining aspects the mechanics of each of the seven transactions were virtually the same. That is, in each instance, Fruehauf, in preparation for the sale, prepared all the necessary documents to complete the sale and to transfer title to the purchaser, Newton. This documentation included the installment contract, a security agreement and financing statement for filing under the Uniform Commercial Code (the "U.C.C."), and applications for certificate of title and for registration of the trailer. Additionally, for each of the used trailers on which certificates of title were outstanding Fruehauf prepared a document releasing its lien. On the new trailers Fruehauf also prepared the manufacturer's statement of origin. At the conclusion of each sale Fruehauf instructed Gringeri to deliver the necessary documents (including the application for a certificate of title and the application for registration) to the Massachusetts Registry of Motor Vehicles (the "Registry") in order that a new certificate of title issue which would list Newton as the owner and Fruehauf as the first lienholder.

Despite Fruehauf's instructions and, in fact, repeated requests to Gringeri to deliver the necessary documentation to the Registry, and Gringeri's assurances that he would do so, no delivery of the documents was ever made. Thus, no new certificates of title were ever issued on these twelve trailers.

Fruehauf did file U.C.C. security agreements and financing statements for all twelve of the trailers. The financing state-

---

2. The evidence relating to the background of these two trailers is somewhat less clear than

the evidence regarding the first five trailers.

ments were filed with both the Town Clerk of Harvard, Massachusetts (the town in which the principal office of Newton was located) and with the Office of the Secretary of State of the Commonwealth. It is not disputed that such filings were timely or that they were made prior to the date of the bankruptcy petition on August 22, 1978.

Based on these circumstances Fruehauf alleges that it had a perfected security interest in all twelve of the trailers and that its lien attached to the proceeds to the extent of the balance due on the seven contracts.[3] For the reasons set forth below, I reject the contentions advanced by Fruehauf and find that its interest in the proceeds must be subordinated to the interests of the trustee.

■ Pursuant to Section 70(c) of the Bankruptcy Act, 11 U.S.C. § 110(c),[4] a trustee in bankruptcy is granted, as of the date of the bankruptcy petition, the rights and powers of a hypothetical lien creditor.[5] State law then must be examined to determine respective rights of such a lien creditor as against other parties claiming an interest in property of a bankruptcy estate. *In re Clifford*, 566 F.2d 1023 (5th Cir. 1978). Under Massachusetts law, G.L. c. 106 § 9–301,[6] a lien creditor such as a trustee in bankruptcy has priority over all secured creditors except those creditors whose security interests were perfected prior to the date of bankruptcy. *See, In re Miller*, 545

F.2d 916 (5th Cir.), *rehearing denied* 548 F.2d 335, *cert. denied* 430 U.S. 987, 97 S.Ct. 1687, 52 L.Ed.2d 382 (1977). Thus, in the circumstances of this proceeding, in order for Fruehauf to prevail over the trustee with regard to the proceeds, it must demonstrate that it held a valid and perfected security interest in the twelve trailers. *Hagan v. Gardner*, 283 F.2d 643 (9th Cir. 1960); 4A *Collier on Bankruptcy* ¶ 70.39 at 477 (14th ed. 1978).

■ Fruehauf asserts that at all times relevant to this proceeding, it held a valid and perfected security interest in each of the twelve trailers, and that therefore its interest in the proceeds should prevail over the interest of the trustee. In support of this contention, Fruehauf first maintains that it complied with all the necessary filing requirements under Article 9 of the U.C.C.[7] and thus perfected its security interests under the appropriate U.C.C. provisions.

Fruehauf concedes that under the Massachusetts law as it presently exists, filing under the provisions of the U.C.C. is not effective to perfect a security interest in motor vehicles and that the exclusive method of perfecting security interests in such property is through compliance with the requirements of the Motor Vehicle Certificates of Title Law (the "Certificates of Title Law"), G.L. c. 90D.[8] However, Frue-

---

**3.** Fruehauf asserts that it is entitled to the sum of $60,044.21 out of the proceeds plus interest from September 22, 1978, the date the bankrupt was adjudicated.

**4.** Section 70(c), in relevant part, provides:
The trustee shall have as of the date of the bankruptcy the rights and powers of: ... (3) a creditor who upon the date of bankruptcy obtained a lien by legal or equitable proceedings upon all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt upon a simple contract could have obtained such a lien, whether or not such a creditor exists.

**5.** In fact the trustee is given the status of an ideal lien creditor (*i. e.* a lien creditor without notice of prior security interests despite any actual knowledge that he might have and regardless of whether there exists any creditor without such notice. *In re Babcock Box Co.*,

200 F.Supp. 80 (D.Mass.1961); 4B *Collier on Bankruptcy* ¶ 70.53 at 637 (14th ed. 1978).

**6.** Prior to its amendment in 1979 (and during the period relevant for this proceeding) G.L. c. 106 § 9–301, in pertinent part, stated:
*Persons Who Take Priority Over Unperfected Security Interests; "Lien Creditor".* (1) Except as otherwise provided ... an unperfected security interest is subordinate to the rights of ... (b) a person who becomes a lien creditor without knowledge of the security interest and before it is perfected.

**7.** This section of the U.C.C. is contained in G.L. c. 106 §§ 9–101 *et seq.*

**8.** In general terms in order to perfect a security interest order G.L. c. 90D, a party's security interest must be noted on the certificate of title. A more detailed discussion of perfection under this statute is contained *infra.*

hauf contends that compliance with G.L. c. 90D became the exclusive method of perfection only on or after January 1, 1980, as a result of a 1979 amendment to the U.C.C.[9] Fruehauf asserts that prior to that time perfection could be accomplished either by compliance with c. 90D or by filing under appropriate sections of the U.C.C. Therefore, Fruehauf concludes that since its transactions with Newton took place during 1977 and 1978 (*i. e.*, prior to the effective date of the amendment) its filing under the U.C.C. was sufficient to perfect its interests in the trailers.

Contrary to Fruehauf's contention on this point, a close examination of the relevant statutory provisions of the U.C.C. makes clear that even prior to the 1979 amendment, security interests in motor vehicles could only be perfected under the Certificates to Title Law and not under the U.C.C. Prior to the 1979 amendment, G.L. C. 106 §§ 9–302(3) and (4)[10] provided that where a state had enacted a certificate of title law with regard to property which required the indication of security interests on the certificate of title to perfect such interest, then a security interest in such property could only be perfected under that certificate of title statute and not under the U.C.C. Since Massachusetts, in fact, enacted such a certificate of title statute with regard to motor vehicles in 1971,[11] perfection of a security interest in a motor vehicle from that time forward could only be made by complying with that statute.[12] Therefore Fruehauf's attempt in 1977 and 1978 to perfect its security interests in the twelve trailers by filing under the U.C.C. was simply not effective to perfect such interests.

■ Fruehauf argues in the alternative that apart from any considerations involving the U.C.C., it perfected its security interests in the trailers pursuant to the Certificates of Title Statute, G.L. c. 90D. Fruehauf asserts that it undertook all the required steps set forth in the statute to perfect its interests but that it was frustrated in its attempt to obtain new certificates of title by the false and allegedly fraudulent representations of Gringeri that he would deliver the necessary documents to the Registry and complete the process of perfecting Fruehauf's interests. Fruehauf avers that since it was the fraudulent conduct of Gringeri which prevented it from obtaining new certificates of title, the Court should find that Fruehauf's actions were sufficient to have perfected its interests.

At the conclusion of the trial on this matter, I found that Fruehauf had failed to adduce sufficient evidence to demonstrate that the conduct of Gringeri had been fraudulent. A further review of the evidence reveals no reason for departing from this earlier view. Therefore, I reject Fruehauf's argument that the fraudulent conduct of Gringeri justifies a determination that Fruehauf's security interests in the trailers were perfected or that such alleged fraudulent conduct in any other manner serves as a basis for allowing Fruehauf to recover the proceeds of the sale of the trailers.[13] However, despite this finding the

---

9. The statute amending § 9–302 of the U.C.C. was 1979 Mass. Acts ch. 512 § 7.

10. G.L. c. 106 § 9–302 in relevant part, provided:
(3) The filing provisions of this Article do not apply to a security interest in property subject to a statute...
(b) of this state ... which requires indication on a certificate of title of, such security interests in such property.
(4) A security interest in property covered by a statute described in subsection (3) can be perfected *only by registration or filing under that statute or by indication of the security interest on a certificate of title or a duplicate thereof by a public official.* [Emphasis added].

11. Massachusetts enacted its Certificates of Title Statute in 1971, and it became effective on September 1, 1972.

12. Moreover, Section 26 of c. 90D explicitly provides that the method provided in the statute was the exclusive means of perfecting security interests in property covered by the statute (*i. e.* motor vehicles).

13. This Court's determination that Fruehauf failed to adduce sufficient evidence to demonstrate that Gringeri's conduct had been fraudulent is also applicable to Fruehauf's other allegation of fraudulent conduct by Gringeri. Fruehauf's assertion that Gringeri acted fraudulently in failing to reveal that Newton had

Court is still faced with the issue whether, apart from any notions of fraud, Fruehauf's partial compliance with G.L. c. 90D is sufficient to find that its security interests are perfected.

The resolution of this issue requires an examination of the statutory scheme included within G.L. c. 90D. Section 21 provides, in relevant part:

A security interest in a vehicle for which a certificate of title is issued under this chapter is perfected by the delivery to the registrar of the existing certificate of title, if any, an application for a certificate of title containing the name and address of the lienholder and the date of his security agreement and the required fee. It is perfected as of the time of its creation if the delivery is completed within ten days thereafter, otherwise, as of the time of the delivery.

Under § 22 of the statute the secured creditor, as the party seeking the benefits of the statute, has the responsibility of insuring that the necessary documentation is delivered to the Registrar. That is, the secured party must "cause" the appropriate documentation to be delivered to the Registrar or instruct the purchaser to deliver such material thereto. The statute further provides that the secured party can, in fact, instruct the purchaser to deliver all the necessary material to the secured party.[14] Thus, under the statutory scheme the secured party is given both the authority and the ability to insure that its security interests are perfected. In this type of statutory scheme, diligence by the secured party in complying with the statutory requirements is to be rewarded while a lack of such diligence should not be. *In re Keidel*, 613 F.2d 172 (7th Cir. 1980).

■ Turning to the facts of this case, it is abundantly clear that Fruehauf possessed the ability to perfect its security interests in the trailers, but that it failed to diligently

assure that all the required steps were completed. The evidence demonstrates that Fruehauf had conducted business with Gringeri over a period of twenty-five years and was aware that Gringeri conducted his business affairs in a rather casual and lax manner. This pattern of somewhat casual business conduct evidently continued throughout the period April 1977 to May 1978 during the course of the seven contracts entered in to by the parties.

As noted earlier, at each transaction Fruehauf prepared the necessary documentation and instructed Gringeri to file the same with the Registry. Fruehauf's former credit manager testified that under usual circumstances Fruehauf would receive new certificates of title with its secured status noted thereon within 30 to 60 days after the documents had been delivered to the Registrar. The record further shows that when Fruehauf learned that Gringeri had not delivered the documents to the Registrar, representatives of Fruehauf made repeated requests on Gringeri that he make the necessary delivery. Despite the fact that Fruehauf became aware that its requests went unheeded by Gringeri, it continued to conduct its business with Gringeri in exactly the same manner. That is, during the thirteen month period from April 1977 through May 1978 Fruehauf continued to enter into additional contracts with Gringeri for the sale of trailers and continued, despite the fact that it had not received any new certificates of title from the Registrar, its policy of instructing Gringeri to deliver the necessary documentation to the Registrar. While Fruehauf's reliance on Gringeri's assurances that he would deliver the documents to the Registrar may have been understandable at the outset of this period, clearly such reliance as more and more time elapsed was unreasonable.

merged into Gringeri Bros. Transportation Co., Inc. (the "bankrupt") and that Newton no longer existed as a corporation is also unsubstantiated by the record and thus rejected. In addition, it should be noted that in court counsel for Fruehauf conceded that there had not been

sufficient evidence produced on either point to demonstrate the existence of fraudulent conduct by Gringeri.

14. G.L. c. 90D § 22(a).

Fruehauf argues that it was necessary to rely upon Gringeri to deliver the documents to the Registrar and that therefore its reliance was justified. In support of this contention Fruehauf points out that in addition to the other documentation, an applicant is required to show proof of insurance and to pay the appropriate sales tax before any certificate of title will be issued. However, Fruehauf could have developed simple alternate methods of satisfying these conditions and delivered the documents to the Registrar itself. In fact, when queried why it did not deliver the necessary documentation to the Registry itself, a representative of Fruehauf admitted that reliance on the buyer to do so had simply been the procedure that "had always been" utilized.

Furthermore, it should be noted that Fruehauf could have exerted more pressure on Gringeri to deliver the necessary documents to the Registry by a variety of methods. The simplest method, of course, would have been to refuse to sell any additional trailers unless and until Gringeri complied with its instructions. However, whatever its reason, Fruehauf simply did not diligently pursue those actions necessary to insure that its security interests would be perfected.

In light of the circumstances of this proceeding where Fruehauf possessed the ability to insure that its interests would be perfected, but instead unreasonably relied on the efforts of a purchaser known to be lax in his business conduct and continued this unreasonable reliance over a period of thirteen months, I cannot find that Fruehauf acted with the type of diligence required under the statute. Therefore, its interests cannot be found to be perfected under c. 90D. *See, In re Deb Cabinet*, 1 BCD 322 (E.D.Tenn.1974).

■ Fruehauf makes an additional argument with regard to the perfection of its security interests on the six used trailers

which Fruehauf (or its predecessor) had repossessed prior to the sale of Newton and which had outstanding certificates of title from Maine and North Carolina. As to these trailers Fruehauf asserts that since no new certificates of title were ever obtained, the old certificates, which listed Fruehauf as the first lienholder, remained in effect and thus granted it perfected interests in the trailers when sold to Newton.

Fruehauf's position on this point overlooks the fact that once it repossessed the trailers from previous owners and sold them at a foreclosure sale, the security interests held by Fruehauf were discharged under applicable statutes and were no longer of any effect. *See,* 11 M.R.S.A. § 9–504; N.C. G.S. § 25–9–504; *See also,* G.L. c. 106 § 9–504. When these trailers were subsequently sold to Newton new security interests were created. In order to perfect these new security interests, new certificates of title manifesting these new security interests had to have been obtained. Thus, even assuming that the previously obtained certificates of title had granted Fruehauf perfected security interests with respect to the previous owners, under the circumstances of this proceeding, those certificates were not effective when the trailers were subsequently sold to Newton.[15]

■ Finally, with regard to those five trailers sold after January 1, 1978, Fruehauf makes one further argument in support of its claim to the proceeds. Fruehauf asserts that after the merger into Gringeri Bros. Transportation Co., Inc., Newton ceased to exist as a corporate entity and was without authority under Massachusetts law to enter into contracts. Therefore, Fruehauf maintains the contracts it signed with Newton on or after January 1, 1978 were of no force and effect and did not effectively pass title from Fruehauf to Newton. Accordingly, Fruehauf argues that no title could have passed to the trus-

**15.** Fruehauf, also relies on three other sections of c. 90D to support its assertion that complied with the requirements of that section and that, therefore, its security interests are perfected. However, those sections cited by Fruehauf (§§ 2(a)2, 16(a) and 17(b)) are not relevant to the situation where a dealer of motor vehicles attempts to *perfect* a security interest in a motor vehicle sold to a purchaser.

tee and that it is entitled to recover the proceeds from the sale of those five trailers.[16]

This contention is also unavailing to Fruehauf. The evidence demonstrates that even as to those contracts entered after December 31, 1977, it was the intention of the parties that trailers were to be sold by Fruehauf and purchased by a corporation represented by Gringeri. In fact, Fruehauf's former credit manager testified that in selling the trailers in question, all he was concerned with was that Gringeri sign the contracts and that it was irrelevant whether he signed in a representative of Newton or whether he was representing the bankrupt.

As noted above, prior to the time when each of the contracts were to be signed, Fruehauf would prepare an installment contract as well as all other necessary documents. The testimony reveals that the "paperwork" aspect of these business transactions were of little concern to Gringeri and that he simply signed the contracts on the spaces provided therefor. Moreover, Gringeri's "lax" approach to these business technicalities was accepted by Fruehauf and was perceived by Fruehauf as simply part of its long-standing business relationship with Gringeri. Under these circumstances where the misdescription of the corporate name would appear to be the result of Gringeri's inadvertence and oversight and where it was clearly the intention of the parties to enter into a contract to buy and sell the trailers, the misdescription does not render the contracts null and void. *See, In re B–F Building Corporation,* 284 F.2d 679 (6th Cir. 1960).

Furthermore, it should be noted that subsequent to January 1, 1978, payments for the trailers were made on checks drawn by the bankrupt. Fruehauf apparently raised no objections or questions to this practice. Having thus accepted, at least partially, the benefits of its contracts for the sale of the

trailers, Fruehauf may not here be heard to deny the existence or validity of such contracts.

Therefore, since Fruehauf has failed to establish its status as a holder of a valid and perfected security interest in the trailers and has asserted no other satisfactory basis for the recovery of the proceeds, Fruehaufs' interest in such proceeds must be subordinated to the interest of the trustee.

16. Fruehauf, additionally argues that Gringeri in not revealing to it that Newton had ceased to exist as of December 31, 1977, had committed fraudulent conduct and that such fraudulent conduct should be imputed to the trustee. This Court has previously found that Gringeri's conduct was not fraudulent. On this point see n.13 at 400.