Arthur and Harriet **MOROWITZ**, Howard and Marilyn Farber, Plaintiffs,

v.

The **UNITED STATES**, Defendant.

No. 633–85T.

United States Claims Court.

Oct. 24, 1988.

**623**

lyn Farber (formerly husband and wife) (collectively referred to as taxpayers or plaintiffs),[1] filed this federal income tax refund suit on October 25, 1985, against the United States, defendant herein. Therein the plaintiffs allege that, with regard to taxable year 1975, the Commissioner of Internal Revenue (hereinafter Commissioner) erroneously and illegally assessed additional taxes against them in the amount of $6,614.91 and $7,543.55, respectively, plus deficiency interest thereon. Plaintiffs premise jurisdiction in this court under the Tucker Act, 28 U.S.C. § 1491,[2] and the Internal Revenue Code of 1954, 26 U.S.C. § 7422.[3]

Subject action is before this court for a decision on the merits after a trial conducted in New York City on January 28, 1987. Also before this court is defendant's motion to dismiss the complaint for failure to state a claim upon which relief can be granted. Said motion was orally made in open court at the close of plaintiffs' case-in-chief. Tr. p. 130. The court declined to rule on said motion until the close of all of the evidence.

During the trial, plaintiffs offered evidence ostensibly designed to prove one of the following two alternative positions: (i) that the $25,000.00 disbursement (discussed *infra*) from David Darby, Inc. (hereinafter Darby, Inc.) to Distribpix, Inc. (hereinafter Distribpix), that resulted in the Commissioner's finding a constructive dividend to the plaintiffs was in fact payment under a settlement agreement, *i.e.*, for termination of a contract entered into on December 27, 1973, between Distribpix and Mr. David

Louis Morowitz, Douglaston, N.Y., Atty. of Record, for plaintiffs.

Elizabeth D. DePriest, Washington, D.C., with whom was Asst. Atty. Gen. William S. Rose, Jr., for defendant.

## OPINION

REGINALD W. GIBSON, Judge:

## INTRODUCTION

Plaintiffs, Arthur and Harriet Morowitz (husband and wife), and Howard and Mari-

1. Marilyn Farber and Harriet Morowitz are parties to this action apparently solely by reason of having filed joint returns with their husbands, Howard and Arthur, respectively.

2. 28 U.S.C. § 1491, "Claims against United States generally ...," provides in relevant part:
 (a)(1) The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department....

3. 26 U.S.C. § 7422, "Civil actions for refund," provides in relevant part:
 (a) No suit prior to filing claim for refund. —No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected ... or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

Darby (hereinafter Mr. Darby), and was properly reported as income by Distribpix; or (ii) that if said payment is deemed to have been constructively distributed to the plaintiffs, it should be characterized as capital gains income and taxed accordingly.

Upon a thorough review of the record evidence, we find that the plaintiffs utterly failed to meet their threshold burden of proof by a preponderance of the evidence. That is to say, the plaintiffs failed to present any creditable evidence that demonstrated that the ruling of the Commissioner was incorrect. We reach said conclusion because the proof proffered in the plaintiffs' presentation was altogether wanting of one scintilla of relevant, probative evidence establishing: either (a) that the $25,000.00 payment was related to the settlement of a business relationship between Darby, Inc. and Distribpix; or (b) that Darby, Inc. did not have sufficient accumulated or current year earnings and profits from which to make a taxable dividend payment in said amount. Accordingly, we enter judgment in favor of defendant and concomitantly dismiss the petition on the merits.

FACTS

Based upon the evidence presented during the trial, the court finds the following operative facts.

■ Arthur Morowitz and Howard Farber are the sole stockholders (50% each) of Distribpix, a closely-held corporation,[4] incorporated in 1967 under the laws of the State of New York. Distribpix produces and distributes adult motion picture films. Tr. p. 15. On December 27, 1973, Distribpix entered into a written sales contract with an individual, Mr. David Darby. Pursuant to that agreement, Distribpix sold 26 35mm motion picture films to Mr. Darby for the negotiated price of $150,000.00. Tr. p. 123. Said amount was amortized in 30 equal monthly installment payments of $5,000.00, commencing on May 1, 1974. Pltfs' Ex. 1; Tr. p. 20. The contract contained the scripted name of David Darby, in his individual capacity, and Arthur Morowitz and Howard Farber on behalf of Distribpix. Pltfs' Ex. 1. In order to secure receipt of the aforementioned monthly installment payments, the contract required, contemporaneous with the execution thereof, that *Mr. Darby* execute 30 "separate and consecutive serial negotiable promissory notes in bearer form." Pltfs' Ex. 1. Further, the contract specified that Distribpix thereby relinquished all "rights, *title,* and interest" in subject motion picture films. Pltfs' Ex. 1; Tr. p. 123.[5]

■ Approximately one year after executing the above described sales contract, the plaintiffs (Arthur Morowitz and Howard Farber) and David Darby began conducting business through another closely-held corporation, *i.e.,* David Darby, Inc. Darby, Inc. was formed, *inter alia,* for the purpose of producing and distributing motion picture films. Tr. p. 24. Two-hundred shares of no par stock were authorized, 100 of which were issued to Farber and Morowitz, *i.e.,* 50 shares each. Pltfs' Ex. 3. No evidence was offered to establish what payment, if any, was received from Morowitz and Farber in exchange for these shares of issued stock.[6] Mr. Darby received no stock

---

**4.** A closely-held corporation is one typified by: (i) a small number of stockholders; (ii) no ready market for the corporate stock; and (iii) substantial majority stockholder participation in the management, direction and operations of the corporation. *See Brooks v. Willcuts,* 78 F.2d 270, 273 (8th Cir.1935); *Donahue v. Rodd Electrotype of New England,* 367 Mass. 578, 328 N.E.2d 505, 511–12 (1975).

**5.** The contract also contained a "reversionary" provision. Said provision provided that, in the event Mr. Darby defaulted "at any time with respect to payment of any one of the promissory notes," Distribpix could, at its option, either recover the entire balance due or recover "all of the motion pictures sold." Pltfs' Ex. 1.

**6.** Capitalization of *Mr. Darby's* films does not seem licit based upon the evidence presented to the court. Mr. Darby took no ownership interest whatsoever in Darby, Inc., and the contract relationship between Mr. Darby and Distribpix was not cancelled, or in any way modified in December 1974. Therefore, it does not appear that tangible or legal consideration passed to Mr. Darby at that time in exchange for the film he acquired in December 1973. Furthermore, no evidence was presented to demonstrate that title in the films passed from Mr. Darby to Darby, Inc., either by gift (inter vivos or testa-

ownership interest in Darby, Inc. Thus, Arthur Morowitz and Howard Farber became the sole stockholders of David Darby, Inc. in December, 1974. Messrs. Darby, Morowitz, and Farber were nominated to Darby, Inc.'s Board of Directors on January 20, 1975. Tr. p. 24.[7] Because, at that point in time, the taxpayers owned all of the outstanding stock of both Distribpix and Darby, Inc. and therefore controlled both corporations, Darby, Inc. and Distribpix enjoyed a brother-sister corporate relationship.[8]

Shortly after said formation, on December 24, 1974, *Darby, Inc.* allegedly began tendering payment to its sister corporation, Distribpix, on the contract that was entered into on December 27, 1973 *between Mr. Darby (individually) and Distribpix.* Tr. p. 26. Payments of $5,000.00 were received monthly from Darby, Inc. through October 15, 1975. Tr. p. 26. Plaintiff Farber testified that said payments were made by Darby, Inc. in curtailment of Mr. Darby's contract from December 1974 through October 1975. Tr. p. 26. However, Mr. Darby, Darby, Inc., and Distribpix never entered into a written agreement to memorialize why this alleged arrangement took place. Tr. p. 111–12 and 124–25.

Summarizing for the moment with regard to the above transactions (as they relate to the December 27, 1973 contract between Distribpix and *Mr. Darby*), the court finds that from May 1974 through November 1974 the record shows that the scheduled payments were made according to the contract terms, *i.e.,* Distribpix received $5,000.00 per month *from Mr. Darby.* Then, and for some inexplicable reason, from December 1974 through October 1975, *Darby, Inc. paid to Distribpix peri-* *odic $5,000.00 scheduled payments* that mirrored the amounts due and previously paid by Mr. Darby, the individual. Tr. p. 26. Evidence of Darby, Inc.'s journalization of the corresponding disbursements was not introduced at trial, thus no evidence is available as to how it was recorded for tax purposes by Darby, Inc. As a consequence of the above transactions, by October 15, 1975, Distribpix had received $92,000.00 in installment payments on its contract with Mr. Darby, whereas in fact at that point in time, only $90,000.00 was actually due. Tr. p. 27, 79. (Apparently, the $2,000.00 had been prepaid.)

Notwithstanding the fact that *Mr. Darby's* contract obligation was apparently prepaid to the tune of $2,000.00, on October 16, 1975, Messrs. Darby and Morowitz *jointly* signed a certified check, #599, in the amount of $22,500.00, drawn on the account of Darby, Inc. and *payable to Darby, Inc.* Pltfs' Ex. 5; Tr. p. 97. Subsequently, on October 20, 1975, a second Darby, Inc. certified check, #600, in the amount of $2,500.00, was similarly cosigned by Messrs. Darby and Morowitz. Said check, as the previous one, was also payable to Darby, Inc. Pltfs' Ex. 5. Shortly thereafter, on October 29, 1975, three noteworthy events occurred. First, Morowitz and Farber sold their shares in Darby, Inc. (50 each) to Robert Kane, the individual fired from Darby, Inc.'s general manager position 15 days prior thereto. Tr. p. 144; Pltfs' Ex. 3. The sales agreement was signed by Morowitz, Farber, and Kane, each in his individual capacity.

Second, an "Agreement" was executed by Distribpix and Darby, Inc. wherein the parties agreed to terminate their business relationship; *i.e.,* that relationship whereby

---

mentary) or for consideration. Thus, looking to the record before the court, it is concluded that at the time Darby, Inc. was formed, legal title to the 26 aforementioned films remained in *Mr. Darby;* and there was no formalization of any understanding, transaction, or agreement that would have passed title to said films to Darby, Inc., whereby it could *legitimately* capitalize same.

7. Also on that date, Mr. Darby became president of Darby, Inc., Mr. Morowitz became vice-president, and Mr. Farber became secretary. How- ever, the precise offices that these individuals occupied is not clear from the record. Witness Farber gave confused testimony on the point. Tr. p. 24.

8. Brother-sister corporations are two or more corporations owned and effectively controlled by one or more individuals. *Inland Terminals, Inc. v. United States,* 477 F.2d 836, 840 n. 8 (4th Cir.1973); *Performance Systems, Inc. v. United States,* 382 F.Supp. 525, 532–33 (D.Tenn.1973).

"Distribpix ... provided Darby, [Inc.] with the right to distribute 27 motion picture films." Pltfs' Ex. 4. Twenty-six of the aforesaid films were those same films previously *sold to Mr. Darby* through the December 27, 1973 sales agreement with Distribpix. Tr. p. 32–33; *cf.* Plfts' Ex. 1 *with* Pltfs' Ex. 4. Under this "Agreement," all said films were to be *returned to Distribpix.* However, no consideration was shown to have passed *from* Distribpix *to* either Darby, Inc. or Mr. Darby for return of the films, despite the fact that $92,000.00 had been paid on the December 27, 1973 sales contract. Pltfs' Ex. 4. Said agreement was signed by *Robert Kane* on behalf of Darby, Inc., who on that same day (October 29, 1975) acquired all of the outstanding stock in Darby, Inc. Pltfs' Ex. 4. Arthur Morowitz signed on behalf of Distribpix. Pltfs' Ex. 4.

Finally, on this same date, Arthur Morowitz endorsed *both* of the previously discussed Darby, Inc. checks, *i.e.,* # 599 and # 600 (totalling $25,000.00), over to Distribpix, and deposited same to the account of Distribpix. Pltfs' Ex. 5; Tr. p. 97. It is this cash disbursement from Darby, Inc. to Distribpix that resulted in the additional tax assessment against plaintiffs by the Commissioner of Internal Revenue.

The Commissioner audited the $25,000.00 payment made by Darby, Inc. to its sister corporation, Distribpix, and determined that such represented a constructive dividend of $12,500.00 to each shareholder therein, *i.e.,* plaintiffs Morowitz and Farber, to the extent of their stockholders' interest. Accordingly, the Commissioner assessed additional taxes on the deemed constructive dividend as follows: against the Morowitzes' 1975 joint individual income tax return in the amount of $6,614.91, plus $2,880.92 in deficiency interest; against the Farbers' 1975 joint individual income tax return in the amount of $7,543.55, plus $3,267.68 in deficiency interest. The taxpayers paid such additional tax and interest assessments on or about December 31, 1981.

On March 24, 1983, the Morowitzes and the Farbers filed timely administrative re-

fund claims with the Internal Revenue Service seeking return of the additional taxes assessed by the Commissioner and interest levied thereon. Plaintiffs therein alleged that the Commissioner's decision attributing the receipt of constructive dividend income to them (*i.e.,* sole shareholders of Darby, Inc.) as a result of the $25,000.00 paid by brother corporation, Darby, Inc. to sister corporation, Distribpix, was incorrect, unlawful and illegal. This was true, the plaintiffs asserted, because: (i) the payment was made by Darby, Inc. to Distribpix "as a final settlement of obligations arising from [the] written agreement between the *respective corporations* dated December 27, 1973"; and (ii) "such receipt was properly reported and reflected on the books and records of Distribpix as 'film rental income.'" Petition Exs. A and B (emphasis added). The plaintiffs alternatively argued that—if the Commissioner deemed such payment properly attributable to them, then said payment should be characterized as "additional long term capital gain realized upon the sale ... of the taxpayers' entire stock ownership interest in Darby, Inc." Petition Exs. A and B.

Upon review of plaintiffs' refund claims, the Commissioner denied the same. Specifically, the Commissioner disallowed the refund claims because the plaintiffs *failed to establish* either: (i) that the payment represented a final settlement of obligations arising from a written agreement dated December 27, 1973 *between Darby, Inc. and Distribpix;* or (ii) that Darby, Inc. did not have sufficient accumulated earnings and profits, or earnings and profits for the current year to cover the payment of a taxable corporate dividend. Following the Commissioner's denial of plaintiffs' refund claim, the instant action was filed in this court.

## CONTENTIONS OF THE PARTIES

### A. *Plaintiffs*

The plaintiffs present two arguments in support of their contention that the Commissioner illegally and erroneously assessed additional taxes against them. First, they maintain that the $25,000.00 payment from Darby, Inc. to Distribpix

represents a settlement payment of the balance due on the December 27, 1973 contract entered into between Mr. Darby and Distribpix. Relative to this position, the plaintiffs assert that, in order to sell their stock interest in Darby, Inc. to a third party (Mr. Robert Kane), *Darby, Inc.* paid such sums to terminate *Mr. Darby's* contract with Distribpix. In so terminating *this* (December 27, 1973) contract, plaintiffs boldly maintain that they exercised their business judgment, and avoided the possibility of substantial litigation and attorneys fees that could have resulted if *Mr. David Darby* had breached his contract with Distribpix.[9]

Second, and alternatively, the plaintiffs assert that if the court should determine that the $25,000.00 payment was properly imputed to them, then such sum should be construed as "a step transaction in the termination of the [plaintiffs'] entire interest in Darby, Inc." Pltfs' Post–Trial Memorandum p. 25. Therefore, they postulate that the monies should be characterized and taxed as capital gains income.

### B. *Defendant*

As previously mentioned, at the close of plaintiffs' case-in-chief, defendant orally moved to dismiss the action, due to plaintiffs' failure to establish a claim upon which relief could be granted by rebutting the presumption of the correctness of the determination of the Commissioner. Tr. p. 130. The court, after some reflection, took said motion under advisement. In opposition to plaintiffs' assertions, defendant maintains that because it is undisputed that —(i) there was no agreement pursuant to which Darby, Inc. was assigned the rights and assumed the obligations of Mr. Darby's December 27, 1973 contract with Distribpix, and (ii) the $25,000.00 payment was neither connected with the sale of Darby, Inc.'s stock, nor did it constitute payment of part of the negotiated purchase price of Darby, Inc.'s stock by Robert Kane—plain-

tiffs were compelled (and failed) to establish that Darby, Inc. had a legitimate corporate business purpose for paying $25,-000.00 to Distribpix.

Next, defendant contends that plaintiffs also are not entitled to capital gains treatment with respect to the aforementioned $25,000.00 payment. In this connection, defendant argues that the payment did not represent part of an integrated plan to sell the stock of Darby, Inc. to the buyer, Mr. Kane, because Mr. Kane neither had knowledge of the transfer of funds prior to the sale, nor did he agree to said transfer. Therefore, defendant concludes that the court should enter judgment dismissing the petition.

### SCOPE OF THE COURT'S OPINION

At the outset, we decline to rule on defendant's oral motion to dismiss the petition, advanced at the end of plaintiffs' proof, for failure to state a claim upon which relief can be granted. But rather, we chose to defer our ruling and pass judgment upon the merits of the record evidence adduced at trial. In so doing, the court will first address the operative presumption which the taxpayers are compelled to rebut in order to prevail on the merits of their claims. Next, we shall delineate the burden of proof plaintiffs must satisfy in order to rebut the aforementioned presumption. Finally, we will evaluate the evidence submitted by the taxpayers in rebuttal of the operative presumption and in light of the applicable legal principles.

### ISSUES

Given the strong presumption of favoring the defendant, the threshold inquiry is—whether the plaintiffs have carried their burden of rebutting the presumptive correctness of the Commissioner's determination that the $25,000.00 payment by Darby, Inc. was a constructive dividend in the year of payment. *See Welch v. Helvering*, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed.

---

9. The court notes that the plaintiffs have changed their contention with regard to Darby, Inc.'s obligation under the December 27, 1973 contract. Contrary to the position taken with the Commissioner, they no longer state that said contract was entered into by the *corporations.* Rather, they now blandly maintain that Darby, Inc. somehow was "obligated" to make payments for Mr. Darby.

212 (1933); *Puritan Lawn Memorial Park Cemetery v. United States*, 15 Cl.Ct. 234, 240 (1988); *U.S. Shelter Corp. v. United States*, 13 Cl.Ct. 606, 621–22 (1987); *KFOX, Inc. v. United States*, 206 Ct.Cl. 143, 150–51, 510 F.2d 1365, 1369 (1975).

Inasmuch as we find, as a matter of law, that the plaintiffs have utterly failed to rebut the above-mentioned operative presumption, such failure is dispositive of the merits. Accordingly, the instant petition must be dismissed.

DISCUSSION

At the outset, plaintiffs challenge the Commissioner's determination that the transfer of funds from Darby, Inc. to Distribpix resulted in: (i) a constructive dividend [10] to them as shareholders of Darby, Inc., and (ii) a contribution to the capital of Distribpix. However, unless the taxpayers prove the Commissioner's presumptively correct determination to be erroneous, the tax imposed must be confirmed. *See Welch*, 290 U.S. at 115, 54 S.Ct. at 9.[11]

 As previously stated, Darby, Inc. and Distribpix were "brother-sister" corporations. This is so because, at the time of the relevant transaction, they were effectively controlled and owned exclusively by the plaintiffs, *i.e.*, Arthur Morowitz and Howard Farber. *See Inland Terminals, Inc. v. United States*, 477 F.2d 836, 840 n. 8 (4th Cir.1973); *Performance Systems, Inc. v. United States*, 382 F.Supp. 525, 532–33 (D.Tenn.1973). Generally, "where brother-sister corporations are involved, earnings can be transferred between them only through the common … shareholders, who will be subject to a progressive individ-

ual income tax." *Inland Terminals*, 477 F.2d at 840. The test for determining whether such distribution of funds constitutes a dividend is whether the transfer primarily is made for the benefit of the shareholder and whether he received a direct or tangible economic benefit therefrom. *Joseph Lupowitz Sons, Inc. v. Commissioner of Internal Revenue*, 497 F.2d 862, 868 (3d Cir.1974); *Gilbert v. Commissioner of Internal Revenue*, 74 T.C. 60, 64 (1980); *Magnon v. Commissioner*, 73 T.C. at 994.

Relying on these general principles, the Commissioner implicitly found that the taxpayers, the sole shareholders of each brother-sister corporation, failed to establish that they did not receive a direct or tangible economic benefit from subject $25,000.00 payment. To reiterate, in order to succeed in the instant action, the plaintiffs must *first* overcome the presumption of correctness that endows the Commissioner's determination. *See Welch, supra,* at 115. However, even assuming, *arguendo*, that the taxpayers overcome this presumption, and we hold, *infra*, that they clearly *do not*, such a showing is *ipso facto*, on this record, insufficient to overcome the additional tax assessment. Plaintiffs have the affirmative burden, nevertheless, of proof by a preponderance of the evidence. In furtherance thereof, the taxpayers would *also* be required to affirmatively prove the true business purpose of the transfer. *See Sammons v. Commissioner*, 472 F.2d 449, 452 (5th Cir.1972); *Gilbert*, 74 T.C. at 64–65.

---

**10.** "Where a corporation confers an economic benefit on a shareholder without the expectation of repayment, that benefit becomes a constructive dividend, taxable to the shareholder," regardless of whether the corporation or the shareholder intended a dividend. *See Magnon v. Commissioner of Internal Revenue*, 73 T.C. 980, 993 (1980).

**11.** On the other hand, *Berkery v. Commissioner of Internal Revenue*, 91 T.C. No. 17, slip op. at 13 (U.S. Tax Court, July 29, 1988) [available on WESTLAW, 1988 WL 77545], holds that—"when … respondent's determinations are shown to be arbitrary and excessive (*e.g.*, without 'factual foundation' or 'rational basis'), the presumption

evaporates, and the burden of going forward with evidence shifts to respondent [defendant]." *Helvering v. Taylor*, 293 U.S. 507, 514–15, 55 S.Ct. 287, 290–91, 79 L.Ed. 623 (1935); *De Cavalcante v. Commissioner*, 620 F.2d 23, 27–28 (3rd Cir.1980). This result obtains since a refund suit in this court is a trial on the merits, not a record review, and a determination on such merits should find whatever operative facts actually exists on said record. Nonetheless, inasmuch as the plaintiffs neither alleged that the assessment was arbitrary or excessive, nor offered proof to that end, we approach this matter from the standpoint that the Commissioner's determination was correct.

## A. *Presumption of Correctness*

Our threshold observation notes that a presumption is a rule of law that attaches *procedural consequences* to an evidentiary fact as to the opponent's duty to come forward with other evidence contrary thereto. 9 J. Wigmore, Evidence § 2491 (Chadborn rev. 1981); *see also Legille v. Dann*, 544 F.2d 1, 5 (D.C.Cir.1976). *Black's Law Dictionary*, 1067 (5th ed. 1972) defines a presumption as—"a rule of law, statutory or judicial, by which finding of a basic fact gives rise to existence of presumed fact, until presumption is rebutted." Simply stated, the effect of a true presumption of law [12] is to invoke a rule of law that would compel the trier of fact to reach the stated rational conclusion absent evidence to the contrary from the opponent thereof. 9 J. Wigmore, Evidence, *supra; Legille*, 544 F.2d at 5. On the other hand, if the opponent presents the necessary quantum of creditable evidence, the presumption evaporates as a rule of law. *Helvering v. Taylor*, 293 U.S. at 514–15, 55 S.Ct. at 290–91; *De Cavalcante v. Commissioner of Internal Revenue*, 620 F.2d 23, 27–28 (3d Cir.1980), *aff'g* a memo of the U.S. Tax Court. In such circumstance, the merits of the case would then be in the hands of the trier of fact (in this case, the court), unfettered by operation of the "presumed" legal rule. 9 J. Wigmore, Evidence, *supra; Legille*, 544 F.2d at 5–6.

▮▮▮ Operating in the instant matter is the presumption that, in the context of a tax refund suit, the Commissioner's determination is generally deemed to be correct. *Welch*, 290 U.S. at 115, 54 S.Ct. at 9; *U.S. Shelter Corp.*, 13 Cl.Ct. at 622; *Berkery v. Commissioner of Internal Revenue*, 91 T.C. No. 17, slip op. at 12 (U.S.Tax Court, July 29, 1988) [available on WESTLAW, 1988 WL 77545]. This presumption at-taches to the defendant's position *ab initio;* hence the taxpayers herein are, as a consequence, duty bound to come forward with evidence sufficient to avert same. Notwithstanding our ultimate finding herein, if the Commissioner's "determinations are shown to be [incorrect], the presumption evaporates," *Berkery*, 91 T.C. No. 17, slip op. at 12 (citations omitted), and "the burden of going forward with evidence then shifts to [the defendant]." *Berkery*, 91 T.C. No. 17, slip op. at 12 [available on WESTLAW, 1988 WL 77545], *citing to Helvering v. Taylor*, 293 U.S. at 514–15, 55 S.Ct. at 290–91; *De Cavalcante*, 620 F.2d at 27–28; *Dellacroce v. Commissioner*, 83 T.C. 269, 280 (1984). Based upon the foregoing principles, the court's first mission is to determine whether the proof presented by the plaintiffs during the aforementioned trial comports with that evidence which is required to disprove the applicable presumption.

## B. *Burden of Proof*

▮▮▮ "The burden of proof in a tax refund suit is on the [taxpayer] petitioner." *Welch*, 290 U.S. at 115, 54 S.Ct. at 9; *U.S. Shelter Corp.*, 13 Cl.Ct. at 621. In this connection, as previously stated, prior to proving the merits of their claims, the taxpayers must first controvert the presumption of correctness that attaches to the determination of the Commissioner. *U.S. Shelter Corp.*, 13 Cl.Ct. at 621–22. To overcome said presumption in the instant matter, the taxpayers have "the burden of presenting 'substantial evidence as to the wrongfulness of the Commissioner's determination.'" *U.S. Shelter Corp.*, 13 Cl.Ct. at 621, *citing, KFOX, Inc.*, 206 Ct.Cl. at 151–52. Specifically, the plaintiffs must present substantial evidence to the effect that: (i) Darby, Inc. was legally obligated to Distribpix at the time of payment in

---

**12.** The court in *Legille* distinguished presumptions of law from presumptions of fact. As the court correctly noted:

> [T]he presumption "of law"—the procedural rule dictating a factual conclusion in the absence of contrary evidence—[is distinguishable] from the presumption "of fact," which in reality is not a presumption at all, see 9 J. Wigmore, Evidence § 2491 at 288–289 (3d ed.

1940), and from the "conclusive" presumption, which is actually a substantive rule of law. See 9 J. Wigmore, Evidence § 2492 (3d ed. 1940); C. McCormick, Evidence § 342 at 804 (2d ed. 1972).... A presumption, ... of law, is an inference which the law directs the (trier of fact) to draw if it finds a given set of facts....

544 F.2d at 5, n. 24 (citations omitted).

October 1975 on the *contract* entered into between Mr. Darby and Distribpix on December 27, 1973; (ii) the $25,000.00 payment by Darby, Inc. to Distribpix represented a final settlement of the aforementioned obligation; and (iii) they (the taxpayers) received no direct or tangible economic benefit from said payment, *Joseph Lupowitz Sons,* 497 F.2d at 868; *Gilbert,* 74 T.C. at 64; *Magnon,* 73 T.C. at 994; *or* (iv) Darby Inc. had neither retained earnings nor profits for the current year from which to pay taxable dividends. As we find, *infra,* the taxpayers' meager proof offered little, if any, rebuttal evidence, all of which was insufficient to overcome the Commissioner's determination.

### C. *Analysis of Evidence Presented*

From our analysis of the entire record, we find that the plaintiffs, sole shareholders of brother-sister corporations Darby, Inc. and Distribpix, offered absolutely no coherent or probative evidence designed to establish any of the above-enumerated facts. We will now address each of the foregoing issues, seriatim.

1. *Darby, Inc. was obligated to make payments to Distribpix on the contract entered into between Mr. Darby and Distribpix.*

■ In order to meet their burden of proof, it is incumbent upon the plaintiffs to offer evidence sufficient to prove the purported obligation of Darby, Inc. to Distribpix for Mr. Darby's December 27, 1973 contract with Distribpix. We find, relative thereto, that plaintiffs simply failed to satisfy the burden.

At the trial, only one witness testified on behalf of plaintiffs, *i.e.,* Mr. Farber. Mr. Farber, to the limited extent we deem his testimony credible, conceded that there was no written agreement whereby Darby, Inc. obligated itself to make payments on *Mr. Darby's* December 27, 1973 contract with Distribpix; that only David Darby, the individual, was liable therefor; and that to his knowledge no document was executed for a consideration where Darby, Inc. assumed the December 27, 1973 obligation of David Darby, the individual. Tr. p. 80–81; 112–

13; 124–27. Moreover, he (Farber) established that the December 27, 1973 contract payments were current on the date Darby, Inc. transferred subject $25,000.00 to Distribpix. Tr. p. 79, 111.

To the degree this testimony was relevant, we find that it is thoroughly unsupportive of the plaintiffs' contention that Darby, Inc. was *obligated* to make *any* payments to Distribpix with reference to the December 27, 1973 sales agreement between David Darby (individual) and Distribpix. Pltfs' Ex. 1. To the contrary, such testimony contradicts the plaintiffs' stated position. Tr. p. 80–81. Thus, it can be seen that plaintiffs offered no probative evidence, through testimony or written documentation, supportive of their contention that David Darby, Inc. was legally obligated to curtail the balance due ($58,000.00) by David Darby (individual) to Distribpix under the December 27, 1973 contract. Pltfs' Ex. 1.

The court further notes that certain evidence *could* have been presented, but that such was not. Co-plaintiff Mr. Morowitz, the other shareholder in Darby, Inc. and Distribpix and principal in many of the questionable transactions, was neither called to testify nor was his absence as a witness explained. This is so in spite of the fact that: (i) he *signed* both checks (totalling $25,000.00) that were transferred to Distribpix; (ii) he participated in the "negotiations" that took place to sell the stock of Darby, Inc. to Mr. Kane; and (iii) he allegedly fed documents to Mr. Farber and showed him letters in preparation for the instant trial. Tr. p. 95. If, in fact, plaintiff Morowitz was as knowledgeable as it appears Mr. Farber seems to suggest, his testimony, no doubt, would have been invaluable to the plaintiffs in support of their claims.

Similarly, Mr. Darby, for some unknown reason, was not called as a witness. Based upon the evidence presented during trial, it would appear that *he owned* the 26 films (that were the subject of not only the December 27, 1973 contract between Mr. Darby and Distribpix (Pltfs' Ex. 1), but also the October 29, 1975 "Agreement" between

Distribpix and Darby, Inc. (Pltfs' Ex. 4)), not Distribpix. Therefore, it also seems clear to this court that Mr. Darby possibly could have enlightened the court as to *why* the corporation (Darby, Inc.) allegedly undertook payments on his December 27, 1973 contract obligation to Distribpix.

Moreover, Darby, Inc.'s relevant financial records and income tax returns were not introduced into evidence. Perhaps through them, some light could have been shed on the ultimate issue—regarding the true and bona fide business purposes of the $25,000.00 expenditure, *supra.* In sum, the individuals, *i.e.,* Messrs. Morowitz and Darby, could have been called to explain and verify the taxpayers' contentions. Likewise, certain Darby, Inc. records, *supra,* could have been adduced into evidence at trial, there being no evidence to the contrary. Nonetheless, the plaintiffs not only neglected to do so, for whatever reason, but also failed to explain such failure.

█ Inasmuch as a party's failure to bring forth evidence within his control, or to explain such omission, warrants an inference that the evidence, if proffered, would be unfavorable to his cause, *see Interstate Circuit, Inc. v. United States Department of Treasury,* 306 U.S. 208, 226, 59 S.Ct. 467, 474, 83 L.Ed. 610 (1939); *Lepkowski v. United States,* 804 F.2d 1310, 1323 (D.C. Cir.1986), we conclude that the plaintiffs' failure to call the foregoing witnesses and introduce certain Darby, Inc. records, *supra,* is motivated by the negative impact that such evidence would have had on their tenuous contention. Accordingly, we find as a matter of law that the Commissioner's determination was not rebutted to the extent he found that Darby, Inc. was under no obligation to make payments to Distribpix, Inc., in view of the David Darby December 27, 1973 contract or any other contract stemming therefrom.

█ Finally, to the extent that the plaintiffs imply, in their post-trial brief, that the mere incorporation of David Darby, Inc. somehow resulted in the new corporation being responsible for Mr. Darby's contract, we find such implication fatuous. It is a fundamental principle of law that,

"until a corporation has come into being, at least to the extent of having a de facto existence, it cannot contract as a corporation." 1A Fletcher Cyc. Corp. § 205 (Perm. ed.). Hence, since it cannot contract, it cannot be chargeable with liability upon a contract made by its promoters prior to the time of its coming into being. *Id.* Therefore, for purposes of contracting, it is irrelevant that the promoters are the only stockholders. The newly-formed corporation generally will not be liable on promoter contracts in the absence of "a statute or charter provision or a corporate act of adoption or ratification or novation, nor can it be considered as a party to the contract and be bound thereby in disregard of the distinction of the corporate entity from the persons of the members." 1A Fletcher Cyc. Corp. § 205; *see also* n. 5 and n. 6 therein. Thus, the intent of the parties is of material importance in this respect. *Cf. Whitney v. Wyman,* 101 U.S. 392, 396, 25 L.Ed. 1050 (1879). No evidence whatsoever of the parties' intent in this matter was presented to the court for consideration. Also absent was a creditable assertion by the plaintiffs that Darby, Inc. adopted, ratified, or became obligated upon Mr. Darby's contract by novation. Accordingly, we find plaintiffs' post-trial rationalization to be of little merit.

2. *The $25,000.00 payment by Darby, Inc. represented a final settlement of Mr. Darby's contract obligation to Distribpix.*

█ In order for plaintiffs' assertion in this regard to have any meaning, the court must first ascertain the nexus between Darby, Inc.'s payment to Distribpix (October 29, 1975) and the December 27, 1973 contract entered into by Distribpix and Mr. Darby. In other words, the court must find upon what authority Darby, Inc. would undertake to settle Mr. Darby's contract obligation with Distribpix. As noted, *supra,* no evidence was adduced that would establish that Darby, Inc. was obligated to make payments on Mr. Darby's December 27, 1973 contract. Reviewing the record, we are constrained to likewise conclude

that the plaintiffs submitted no evidence that would even remotely infer a plausible connection between Darby Inc.'s $25,000.00 distribution to Distribpix, and the December 27, 1973 contract between Distribpix and Mr. Darby. We further conclude that the record fails to establish that Darby, Inc. had a legal right to involve itself into the contract relationship between Mr. Darby and Distribpix, *i.e.*, to terminate such relationship. Accordingly, we hold that nothing in this record warrants a finding that subject $25,000.00 payment represented a final settlement of *Mr. Darby's* December 27, 1973 contract obligations to Distribpix.

Plaintiffs offered the testimony of Mr. Farber and an October 29, 1975 "Agreement" (Pltfs' Ex. 4) between Darby, Inc. and Distribpix to buttress the above-stated assertion. In that connection, Farber testified that the December 27, 1973 sales agreement was "taken over by David Darby, Incorporated in 1974." Tr. p. 78. However, as amplified, *supra*, Farber also testified that no formal documentation of this fact existed; and as we noted, Mr. Darby was not called to verify Mr. Farber's statement. Continuing, nonetheless, Mr. Farber testified that the purpose of issuing Darby, Inc. checks # 599 and # 600 (*i.e.*, the $25,-000.00 disbursement) was "to terminate the agreement for the motion pictures from the 1973 original contract [and], to terminate [Mr. Darby's notes]...." Tr. p. 78.

The October 29, 1975 "Agreement" (Pltfs' Ex. 4) was then offered as evidence that this transaction occurred. However, close scrutiny of said document reveals that it simply fails to establish the requisite nexus between the subject $25,000.00 distribution to Distribpix and termination of Mr. Darby's December 27, 1973 contract. *By its expressed terms*, the October 29, 1975 "Agreement" (Pltfs' Ex. 4) was allegedly entered into in order to "expeditiously terminate" *Distribpix's relationship with*

*Darby, Inc.* and not *Mr. Darby*. Thus, the operative "relationship" that was terminated thereby was that relationship wherein Darby, Inc. distributed films that were allegedly the property of Distribpix. However, plaintiffs now aver that paragraph 9 of said agreement "terminated" *Mr. Darby's* contract, in that said paragraph provided that:

9. Payment of a series of promissory notes executed by David DARBY as an individual in connection with these motion picture films is hereby waived and DISTRIBPIX further waives any rights of collection or enforcement of said notes *provided the terms of this agreement are complied with.*

(Pltfs' Ex. 4; emphasis added). This paragraph, coupled with the aforementioned testimony of co-plaintiff, Farber, is the crux of plaintiffs' "proof" that the $25,-000.00 payment was made to terminate Mr. Darby's December 27, 1973 contract with Distribpix.

At first blush, the plaintiffs' bare assertion that Darby, Inc. made the $25,000.00 payment to terminate Mr. Darby's contract appears incredulous, particularly in light of the testimony and evidence adduced at trial. In support of its conclusive assertions, plaintiffs postured no legal principle upon which they based said contention; and, moreover, they argue no legal basis upon which Darby, Inc. became liable for Mr. Darby's obligation to Distribpix under the December 27, 1973 contract.

However, after considerable reflection, the court finds that the contentions raised by the plaintiffs (although not specifically framed thereunder) sound *in theory* akin to an assignment[13] and/or a novation.[14] As such, what is material to our inquiry now is—whether there is any creditable evidence in the record sufficient to establish that Mr. Darby assigned his rights under the December 27, 1973 contract to

13. An assignment is the transfer by a party (here Mr. Darby) of all of its rights to some kind of property, usually intangible property, such as rights in a lease, mortgage or an agreement of sale, to another third party (here Darby, Inc.). *Black's Law Dictionary* 109 (5th ed. 1972).

14. As used in this opinion, a novation is the substitution by mutual agreement, of one debtor for another or of one creditor for another whereby the old debt is extinguished. *Black's Law Dictionary* 959 (5th ed. 1972).

Darby, Inc.; *or* whether the parties entered into a novation agreement with respect to said contract. Paragraph 13 of the October 29, 1975 "Agreement" provides that—"[t]his agreement shall be governed by the laws of the State of New York."

Looking to New York law, we find that in order for there to have been a valid assignment of Mr. Darby's contract rights to Darby, Inc., Mr. Darby, as assignor, would have to have transferred to Darby, Inc. as assignee, all of his rights, title, and interest in the December 27, 1973 contract. *See Wood v. Rocker,* 420 N.Y.S.2d 330, 332, 100 Misc.2d 890 (N.Y.Fam.Ct.1979); *Acetate Box Corp. v. Johnson,* 80 N.Y.S.2d 134, 135, 193 Misc. 54 (S.Ct.1948), *citing,* 6 C.J.S. Assignments 82, p. 1136, 1137. In so doing, the "whole right of the assignor" (Mr. Darby) would pass to the assignee (Darby, Inc.), and the assignor would have no further interest therein. *Acetate Box,* 80 N.Y.S.2d at 135.

In *Acetate Box, supra,* the trial court was faced with a situation not unlike that presented in the instant case, albeit in the context of a breach of contract action. There, a sales agreement was entered into between the plaintiff and the defendant partnership whereby plaintiff was to supply the defendant partnership with boxes. Before plaintiff made its first delivery, the defendant partnership transferred all of its assets to a corporation formed by the partners thereof. The officers and stockholders of the newly-formed corporation included members of the former partnership. Thereafter, the newly-formed corporation continued the former partnership's business, under basically the same name as the former partnership. Plaintiff delivered the boxes to the partnership address (now that of the corporation), naming the partnership as addressee. The corporation accepted the boxes.

The court held that the result of the transfer of assets was that the *partners, who could not assign their liability,* but could transfer their assets, *ceased to have any contract,* although they would be liable for the amount due the plaintiff thereunder. This was true because, under New York law, "any transfer of contractual duty so as to discharge the original obligor (the partnership), requires the obligee's (the plaintiff's) assent where such transfer alters the substance of the contract or otherwise materially affects the obligee's rights." *Beck v. Manufacturers Hanover Trust Co.,* 481 N.Y.S.2d 211, 217, 125 Misc. 2d 771 (S.Ct.1984), *citing,* Restatement, Contracts (2d) § 318, comment d; §§ 280, 328, 329; 3 Williston, Contracts § 404 *et seq.* (3d ed. 1960); 4 Corbin, Contracts §§ 859–64. Thus, when the *corporation* later breached the contract with the plaintiff, and plaintiff sued the *partnership,* the court found that the partners could not counterclaim for breach of contract against the plaintiff, because the partnership's right to performance was assigned (with the assets) from the partnership to the newly-formed corporation. The court then examined the evidence adduced at trial to determine whether there was a novation, and found that such had *not* occurred, because the defendant partnership failed to show that the plaintiff assented to a transfer of liability to the newly-formed corporation.

Analogously, we note in the instant case, there is a *slight,* but neither persuasive nor conclusive, indicia that Mr. Darby's assets (*i.e.,* the films) may have been transferred to Darby, Inc. That is to say, Mr. Darby *may* have assigned his right to the films to Darby, Inc., though there is no direct evidence to that effect. However, for the reasons stated *infra,* we find that even if it were conclusively established (and it is not) that Mr. Darby assigned the 26 films to Darby, Inc., there is no evidence in the record from which we may find that, concomitantly therewith, Distribpix, Darby, Inc., *and* Mr. Darby agreed to the substitution of Darby, Inc. as the obligor under the December 27, 1973 contract. In other words, here a novation was neither argued nor established.

Under New York law, a novation, *i.e.,* a contract which works an immediate discharge of a previously existing contractual duty, *Kasper v. Roberts,* 464 N.Y.S.2d 642, 644, 119 Misc.2d 829 (Civ.Ct.1983), must never be presumed. *Beck,* 481 N.Y.S.2d at

218. "In order to prove a novation, there must be a 'clear and definite intention on the part of *all* concerned that such is the purpose of the agreement.'" *Beck*, 481 N.Y.S.2d at 218 (emphasis added). To this extent, a contract of novation requires the real or reasonably apparent assent of "or subsequent ratification by [all of] the parties involved, in substitution of the subsequent agreement for the old." *Kasper*, 464 N.Y.S.2d at 644. Assent, under these circumstances, is a question of fact which the court must determine based upon "an examination of the intentions of the parties, as expressed by the testimony and existing documentation." *Kasper*, 464 N.Y.S.2d at 644. Therefore, in the instant matter, in order to sustain their argument, obscure as it is, the plaintiffs must satisfy the conjunctive elements of a novation, *i.e.*: (i) mutual assent; (ii) *immediate* discharge of the old obligation; (iii) consideration therefor; *and* (iv) presence of a new party. *Wasserstrom v. Interstate Litho Corp.*, 495 N.Y.S.2d 217, 219, 114 A.D.2d 952 (1985); *Kasper*, 464 N.Y.S.2d at 644.

Initially, we encounter extreme difficulty in applying the above principles to the facts on this record because there was no written novation agreement *per se* introduced into evidence. Hence, there was no tangible "real or reasonably apparent" showing of assent of the parties involved submitted to the court. Next, the court is confronted with the problem that not only was no tangible document submitted evidencing a novation, but credible testimony from the relevant parties, *i.e.*, Distribpix, Mr. Darby, *and* Darby, Inc., to verify this assertion was also not adduced. With the exception of plaintiff Farber's *self-serving* statement that Darby, Inc. took over Mr. Darby's contract, there is absolutely nothing else in the record upon which the court could reasonably base a finding that the parties *entered into* a novation agreement.

Nonetheless, even assuming *arguendo* that the court were to find that the October 29, 1975 "Agreement" was probative *circumstantial* evidence that a novation in fact occurred, and that termination of Mr. Darby's obligation took place thereunder (with respect to which we are not inclined to so find), we are bound by New York law as to the proper inferences we may draw from said document. Under New York law, a true novation requires three parties, whereby one party (Mr. Darby) is *immediately* discharged from an obligation (the December 27, 1973 sales contract) and a new party (Darby, Inc.) is substituted in his place. *S & L Paving Corp. v. MacMurray Tractor Inc.*, 304 N.Y.S.2d 652, 657, 61 Misc.2d 90 (S.Ct.1969). Nothing in this record (including the October 29, 1975 "Agreement") shows that: (i) Mr. Darby was discharged from performing his obligation under the December 27, 1973 sales contract in December 1974 (the date Darby, Inc. allegedly began tender of payment on the 1973 contract); (ii) Darby, Inc. assumed Mr. Darby's responsibility under said December 27, 1973 agreement; (iii) consideration passed between Mr. Darby, Darby, Inc., and/or Distribpix for any such agreement; and (iv) all of the parties consented to such an arrangement either in December 1974, or thereafter. In fact, all that Plaintiffs' Exhibit 4 establishes is that for some unexplained reason, upon terminating its (Distribpix's) alleged relationship with Darby, Inc., Distribpix made a gratuitous "waiver" of its right to collect on Mr. Darby's December 27, 1973 contract. The enforceability of such "waiver" *by Mr. Darby* against Distribpix is questionable, at best, because *Mr. Darby* was not a party to the October 29, 1975 contract and gave no consideration for said waiver to the extent manifested by the record.

Therefore, reviewing the provisions of the October 29, 1975 "Agreement" (Pltfs' Ex. 4), we must hold that said agreement fails to establish that a novation agreement was executed by the relevant parties because: (i) Mr. Darby was not discharged of his debt thereunder, inasmuch as he was not a party to said agreement; (ii) under said agreement, Darby, Inc. does not "immediately" assume the obligations under the December 27, 1973 contract; (iii) no consideration passed; and (iv) only two of the necessary parties, *i.e.*, Darby, Inc. and Distribpix, executed the October 29, 1975

"Agreement." [15]

Corroborative of the foregoing conclusion is the testimony in defendant's case of Mr. Robert Kane, the manager of Darby, Inc. Mr. Kane testified that to his knowledge there was no written agreement where Darby, Inc. assumed David Darby's (the individual) December 27, 1973 obligations to Distribpix (Tr. p. 132); as manager of Darby, Inc., he did not approve the $25,000.00 payment to Distribpix; the payment was not discussed with him, nor did he have any knowledge of same (Tr. p. 139); the $25,000.00 payment to Distribpix was not "part of [his] purchase price of the stock (Tr. p. 142); and the $25,000.00 payment by Darby, Inc. to Distribpix was not part of the payments then due under the December 27, 1973 agreement between David Darby (the individual) and Distribpix (Tr. p. 143).

For the above-stated reasons, the October 29, 1975 "Agreement" cannot be reasonably read as an assent by Mr. Darby to assign his right to ownership of subject motion picture films to Darby, Inc. in exchange for Darby, Inc.'s assumption of liability under the December 27, 1973 contract. At *most*, said October 29, 1975 contract could only affect whatever relationship Darby, Inc. had with Distribpix. Accordingly, we hold that the plaintiffs' failure to prove either an assignment or a novation of the December 27, 1973 contract precludes a finding that the $25,000.00 payment by Darby, Inc. was in settlement of *Mr. Darby's* contract obligations to Distribpix.

3. *Plaintiffs received no direct or tangible economic benefit from the transfer of funds.*

Simply stated, to prove this assertion, as required, plaintiffs must demonstrate that subject $25,000.00 payment from Darby, Inc. to Distribpix was made to advance its (Darby, Inc.'s) own business interests. *See Magnon v. Commissioner of Internal Revenue*, 73 T.C. at 997–98.

The relevant inquiry with regard to whether a transfer of property between brother-sister corporations results in a dividend to the shareholders of the transferor corporation is: (i) did the transfer cause funds to leave the control of the transferor corporation (Darby, Inc.)?; (ii) did such transfer permit the stockholder to exercise control over such funds either directly or indirectly through some instrumentality other than the transferor corporation (Darby, Inc.)?; and, if the answer to the previous two questions is in the affirmative, (iii) did the transferor corporation intend to consummate or further a valid business purpose by such transfer? *Sammons*, 472 F.2d at 452. Our answer to the first two questions is affirmative, and, as to the last question, the answer is negative. Plaintiffs' Exhibit 5 established that monies left Darby, Inc. by two certified checks paid to the order of David Darby, Inc. drawn on the account of David Darby, Inc. Such funds were endorsed over to Distribpix. The taxpayers, as sole owners of Darby Inc. and Distribpix, were obviously free to exercise control thereover. Consequently, we look to the facts to determine whether Darby, Inc. had a valid *business* purpose for such transfer of funds to Distribpix.

Although "the line between shareholder benefit and corporation benefit is not always clear [due to the fact that] some expenditures embody both elements, an indirect (or incidental) benefit to the shareholder, therefore, should not *by itself* be treated as a distribution to [the shareholder]." *Sammons*, 472 F.2d at 452 (emphasis added); *see also, Magnon*, 73 T.C. at 997–98. In search of a bona fide business purpose, the courts look to the facts underlying the transfer, and find shareholder benefit only where such results in a direct or tangible economic benefit to the shareholder. *Lupowitz*, 491 F.2d at 868; *Gilbert*, 74 T.C. at 64; *Magnon*, 73 T.C. at 994. Therefore, where the business justification for the expenditure put forward is not of sufficient substance to overcome a conclusion that the distribution was primarily for the shareholder's economic benefit, the distri-

**15.** Of significance, also, is the fact that the text of the agreement makes no mention whatsoever of a $25,000.00 payment by Darby, Inc. to settle Mr. Darby's contract obligation.

bution will be deemed to be a constructive dividend to the shareholder of the transferor corporation. *Sammons,* 472 F.2d at 451–52; *Gilbert,* 74 T.C. at 66–67.

As we found, *supra,* based upon the record evidence presented by the plaintiffs: (i) Darby, Inc. was not obligated to make payments on Mr. Darby's contract with Distribpix; and (ii) the $25,000.00 payment was not made as a final settlement of *Mr. Darby's* December 27, 1973 contract obligations. Therefore, the requisite business justification for said expenditure must be found elsewhere. Plaintiffs submitted two contracts (Pltfs' Exs. 3 and 4) into evidence which purported to enlighten the court as to the motive behind the $25,000.00 distribution. However, upon review, we find such agreements altogether vacuous in this regard.

Plaintiffs' Exhibit 3, a contract entered into by Messrs. Morowitz, Farber, and Kane, each in his individual capacity, provided for the sale of Morowitz's and Farber's stock interest in Darby, Inc. to Mr. Kane. Under that stock sales agreement, plaintiffs' 100 shares were sold to Mr. Kane at a cost of $50,000.00, payable as follows: $15,000.00 in cash upon execution of the agreement, and the remaining $35,-000.00, secured by two non-negotiable $17,-500.00 promissory notes payable within 180 days thereafter. No mention of an additional $25,000.00 payment appears in the text of Plaintiffs' Exhibit 3. Mr. Kane testified that he had no knowledge of said transfer of Darby, Inc. funds at the time Plaintiffs' Exhibit 3 was executed, and only became aware of such *after* the checks were returned by the bank. Tr. p. 142–43. Therefore, we find that Plaintiffs' Exhibit 3 neither directly or indirectly points to a business justification for said transfer.

Similarly, as we found, *supra,* the "Agreement" between Darby, Inc. and Distribpix (Pltfs' Ex. 4) demonstrates no reason for the $25,000.00 distribution from the former to the latter. That agreement was entered into to terminate Darby, Inc.'s alleged business relationship with Distribpix, and in that connection it states as follows:

WHEREAS, DARBY is and has been in the business of distributing motion picture films, said films being the property of DISTRIBPIX; and,

WHEREAS, DISTRIBPIX has provided DARBY with the right to distribute twenty-seven (27) motion picture films as more specifically described in Attachment I hereto; and,

WHEREAS, the parties desire to expeditiously terminate said relationship.... (Pltfs' Ex. 4). It specifically provided, *inter alia,* that Darby, Inc. was to: (i) return all of Distribpix-owned property (*i.e.,* the 26 films sold to Mr. Darby and all materials relevant thereto) to Distribpix (Pltfs' Ex. 4, paras. 1 and 2); (ii) notify all third parties that all materials associated with the aforesaid Distribpix property in the hands of said third parties be returned to Distribpix (Pltfs' Ex. 4, para. 3); (iii) deliver to Distribpix a list of all past and present accounts receivable with respect to subject films; (iv) honor all existing agreements (with third parties) regarding said films (Pltfs' Ex. 4, para. 5); and (v) divide outstanding accounts receivable with Distribpix on a 50/50 basis (Pltfs' Ex. 4, paras. 6 and 7). No mention of a $25,000.00 disbursement to Distribpix upon the execution of said agreement for *any* reason appears in said document.

Considering the evidence presented to the court, and the lack thereof, we must find that the plaintiffs' assertion, that they received no direct or tangible benefit for subject $25,000.00 transfer, simply belies the facts in this case. No plausible business justification whatsoever for said transfer has been advanced by plaintiffs, and we can glean none from this record. Absent evidence to the contrary, we therefore hold that the primary purpose of said $25,000.00 distribution was to benefit the taxpayers, Arthur Morowitz and Howard Farber.

4. *Darby Inc. did not have sufficient earnings and profits, neither accumulated nor current, from which to make a taxable dividend payment to its shareholders.*

As an alternative argument, the plaintiffs assert that the $25,000.00 dis-

bursement, if not found to have been related to some business purpose of Darby, Inc., should have been characterized as a return of capital by Darby, Inc. to the taxpayers, and taxed as capital gains income. Therefore, they argue that the plaintiffs may have overcome the Commissioner's characterization of the disbursement as dividend income if they had shown by a preponderance of the evidence that Darby, Inc. simply did not have monies from which a corporate dividend could properly have been paid. However, the problem with this hypothesis is the fact that the plaintiffs have similarly failed to offer any proof in that regard.

Other than the bare allegation that the disbursement *should* have been characterized as capital gains income, the court could find no support for plaintiffs' proposition. That is to say, they have simply failed to submit *anything* into the record for the court to consider. It is a well-settled tax principle that a corporation cannot pay a taxable dividend to its shareholders *unless* it has accumulated or current earnings from which to make such payment. Therefore, plaintiffs, on their burden, were compelled to show that Darby, Inc. did not have the appropriate funds from which to make a taxable dividend distribution. However, surprisingly, no testimony in this regard was offered, nor were Darby, Inc.'s financial records submitted for consideration.

We must, therefore, hold that the plaintiffs failed to establish that Darby, Inc. did *not* have sufficient earnings and profits from which to pay a dividend, and that the Commissioner correctly determined that the $25,000.00 payment from Darby, Inc. to Distribpix constitutes a constructive dividend to the taxpayers, Arthur Morowitz and Howard Farber, as sole owners of Darby, Inc. *See Inland Terminals, supra.* Furthermore, we hold that such funds, in the hands of Distribpix, constitute paid-in capital to the benefit of each taxpayer/shareholder.

CONCLUSION

The implausible position adopted and proffered by the plaintiffs, in the instant case, has probably received far more consideration than was due. This is so because they utterly failed to substantiate *why* the aforementioned exceedingly suspect transactions took place. As stated by Justice Cardozo in *Welch, supra:*

> [Although] [m]en *do* at times pay the debts of others without legal obligation or the lighter obligation imposed by the usages of trade or by neighborly amenities, ... *they do not do so ordinarily,* not even though the result might be to heighten their reputation for generosity and opulence. Indeed, ... payment in such circumstances, instead of being ordinary is in a high degree extraordinary.

290 U.S. at 114, 54 S.Ct. at 9 (emphasis added).

Given the foregoing, this court will not find a highly obscure and unsubstantiated transfer, such as the one at bar, to be anything other than income to the plaintiffs absent creditable proof by a preponderance of the evidence to the contrary. No such showing was made here.

Accordingly, the Clerk shall enter judgment in favor of defendant, for failure of proof by plaintiffs, and dismiss the petition. This disposition moots defendant's oral motion to dismiss made at trial. Costs are hereby assessed against plaintiffs in favor of defendant.

IT IS SO ORDERED.